STODDARD *v.* SAGINAW BUILDING & LOAN ASS'N.

1. BUILDING AND LOAN ASSOCIATIONS—LOANS—COMPETITIVE BID-
DING—EVIDENCE—SUFFICIENCY.

In a suit against a building and loan association for an account-
ing and a discharge of mortgages executed by complainant,
which had been foreclosed, and to set aside sales made there-
under, on the ground that the mortgages were usurious, evi-
dence examined, and *held* to show that there was no com-
petitive bidding at the time the loans were made, as required
by law.

2. SAME — INDUCEMENTS   TO   BORROWERS — ADVERTISEMENTS —
FRAUD.

Where there was evidence that the secretary of a building as-
sociation made persistent efforts to induce an owner of land
to borrow money of the association on the ground that he
could borrow the money at less than the rate of interest he
was then paying, and furnished him with advertising matter
stating that a borrower could pay his loan by paying only 56
per cent. of the amount borrowed, and complainant testified
that the secretary stated that it would be economy to borrow
from the association, it cannot be urged that this was mere
opinion, and not a representation by which the borrower
should not have been misled.

Appeal from Saginaw; Snow, J.   Submitted October 4,
1904.   (Docket No. 3.)   Decided October 26, 1904.

Bill by Walter S. Stoddard and Jane Stoddard against
the Saginaw Building & Loan Association for an account-
ing and the cancellation and discharge of certain mort-
gages.   From a decree for complainants, defendant ap-
peals.   Affirmed.

*Wm. E. Crane* and *George C. Ryan,* for complain-
ants.

*Nathan S. Wood,* for defendant.

HOOKER, J.    Defendant's brief states that on November 1, 1890, Walter Stoddard took 13 shares of its stock, and that on November 10, 1890, he borrowed money on 10 of these shares, bidding 26½ per cent. premium for the loan, and that on November 24, 1890, he bid 27½ per cent. for an additional loan; that on February 13, 1893, he made another loan, upon four other shares of stock, bidding 27½ per cent.  It states further that he paid upon these loans a total of $1,528.17, paying regularly until November 21, 1900, when default in payments began. On July 30, 1901, the stock was canceled, and credited, and foreclosure of the mortgages given by the complainants to secure said loans was ordered by defendant's board of directors.    Defendant claims that it had paid taxes upon the premises for five years, for which it had a lien.    It thereupon proceeded to foreclose by advertisement, and bid in the parcels upon February 8 and 15, 1902, respectively.

A short time after the foreclosure sales the complainants filed the bill in this case, claiming that they were induced to make the mortgages by the fraudulent representations of defendant's secretary, that the contract was usurious, and that they had paid more than was by law due, and prayed for an accounting and a surrender and discharge of the mortgages.    The defendant answered, and a hearing was had, proofs being taken in open court. The record shows that Walter Stoddard testified that he resided in Saginaw, and bought a home of one Burrows, giving him a mortgage for a portion of the purchase price, drawing interest.    He subsequently received a letter from Mr. Fowler, defendant's secretary, stating that he had ascertained that there was a mortgage against the home of the witness on a contract, and that defendant would help him out by letting him have money on a better basis than that upon which he was then getting it.    The witness received many such letters before paying any attention to them.    He finally saw Fowler, and, according to his testimony, Fowler represented to him that by taking stock

with defendant, according to their plan, the loan would not cost more than 7 per cent. interest, and the stock would mature in eight years or less. Fowler sent him the pamphlet issued by the defendant, which purports to explain the method of business, and contains an illustration of results by showing an imaginary loan to John Brown. Fowler had several interviews, and complainant Walter Stoddard finally concluded to place the loan with defendant. He was instructed to attend a meeting, and did so He found a number of men about a table, probably directors. Fowler was there, and took him outside, and told him that bids less than 26½ per cent. would not be accepted; also that high bids were advantageous to the borrower, because they lessened the amount to be paid on the stock. Fowler afterwards arose in the meeting, and said that the association had some money to loan, and asked for bids. Stoddard bid 26½ per cent., and no one else bid, so it was struck off to him. He testified that on the other occasions no form of bidding was had, but he was told that he could have it the same as before.

This state of facts was not admitted. On the contrary, defendant sought to prove that the secretary did not represent that the stock would be paid up in eight years, or that the cost of the loan would be less than 7 per cent., and claims that, if such representations were made, they were mere matters of opinion. They also sought to show by the deposition of Fowler that he did not tell the complainant that bids less than 26½ per cent. would not be accepted, and that the loans were sold upon competitive bidding. Several directors testified upon this subject, and the records of the meetings in question were read in evidence. The learned circuit judge who heard the cause found that the allegations of the bill were sustained, and that the complainants were entitled to the relief prayed. Upon the accounting he found that the mortgages were fully paid upon the commencement of the foreclosures, including interest at 7 per cent., computed semi-annually, but that there was equitably due to the defendant the sum of

$314.71 for taxes and interest. The sales were canceled, and complainants required to pay that sum, failing in which the premises were to be sold. Costs were given to the complainants. The defendant has appealed.

The circuit judge evidently gave credence to the testimony of Walter Stoddard. The testimony is not without corroboration as to the practice of the defendant with relation to bids. Section 7 of the by-laws in force at the time and for some time afterwards provided that the "board of directors shall have power to fix the minimum rate of premium at which money on hand shall be sold," and Fowler testified that he told Stoddard that 25 per cent. was considered a fair premium among associations. One or more of the directors testified that it was never sold at less than 25 per cent., and at the time of Stoddard's transactions there was a rule that 25 per cent. should be the minimum premium. Several witnesses testified to being present at the meetings when complainant bid for his loans, and gave it as their opinion that there was competitive bidding, but upon cross-examination it was made to appear that they had no recollection, and based their opinion solely upon the minutes of the meetings produced on the trial. The minutes of the meeting of November 10th show two loans at 26½ per. cent. and two at 27 per cent. They state:

"Money offered for sale and sold to Lydia Goodby on 21 shares at 26½ per cent., Walter S. Stoddard on 10 shares at 26½ per cent., Henry A. Hare on 7 shares at 27 per cent., Lyman J. Perkins on 1 share at 27 per cent.

"Com. on L. J. Perkins loan reported approving loan.

"*Mr. Vincent:* I move that loan be approved subject to favorable report of attorney.

"*Mr. Moye:* I support.

"Motion carried.

"Com. on Lydia Goodby loan reported approving loan.

"*Mr. Vincent:* I move that the Lydia Goodby loan be approved subject to favorable report of att'y, and that the order be drawn for proper amounts.

"*Mr. Herrig:* I support.

"Motion carried.

"Com. on Henry A. Hare loan reported approving loan.

" *Mr. Herrig:*   I move that the Henry A. Hare loan be approved subject to favorable report of att'y.

" *Mr. Moye:*   I support.

" Motion carried.

"Com. on Walter S. Stoddard loan reported approving loan.

" *Mr. Vincent:*   I move that W. S. Stoddard loan be approved subject to approval of att'y, and that the orders be drawn for proper amounts.

" *Mr. Moye:*   I support.

" Motion carried.   *   *   * "

There is nothing in this to show that any competitive bid was had on the first two loans, or that all of the parties bidding did not understand that 25 per cent. was a minimum, or that they had not all been told that 26½ per cent. was the minimum that would be accepted, as Stoddard says that he was told.

Another point has prominence in this cause. The bill alleges—and there is proof to support it—that the defendant's secretary made a persistent effort to induce Mr. Stoddard to borrow money of his association. If Stoddard was truthful, it was accomplished by leading him to believe that he could borrow money at less cost to himself than the rate he was then paying, viz., 7 per cent., and apparently it was not until he was so convinced that he consented to join the association. That this would depend upon the time required to mature the stock is apparent, hence it was necessary that complainant be made to think that it could and would be brought about within eight years. We understand that the claim that it would probably mature in that time is not disputed, and the advertising matter used and furnished the complainant states that:

" According to the past experience of similar associations, this value will be reached in between eight and nine years, although during that time but about $56 per share would have been paid in, the remaining $44 having accrued to the stock in profits. When the par value is reached it is paid to the shareholder in cash, when no money has been borrowed. If the person has borrowed from the

association during the continuance of the payments, such amount is deducted from the value of the shares."

It is a rather startling proposition that a borrower could pay his loan by paying only 56 per cent. of the amount borrowed. Doubtless it would be contended that this was neither meant nor said, but the statements made would not be unlikely to mislead many of those for whose benefit these associations are ostensibly created, viz., the industrial classes who desire homes. However that may be as to the borrowing class, this statement does show that by past experience a lender can realize a very large rate of interest in eight years. It is manifest that this must be paid by the borrowing class, and no one is more likely to understand this than those who conduct such associations.

The advertisement quoted from does not make a fair showing in its illustration of John Brown's imaginary loan. If it did it would not state that $331.60 shows the cost of a loan, as compared with $420 at 7 per cent., in view of the fact that dues and interest were payable weekly.

One cannot read the advertisement without understanding that the concern which issued it sought to impress possible patrons with the belief that it would be economy for them to borrow from the defendant. The complainant testified that the secretary so represented. Defendant's counsel urge that this was a mere opinion, not a promise nor a representation, and that complainant should not have been misled, because of the printed matter furnished, already referred to.

If the parties met on equal terms, and there was no deceit upon the secretary's part, that contention might be correct; but, if this advertisement was intended and cunningly devised to create an impression that the managers of the association knew to be incorrect or doubted, it might be a fraud, and the perpetrator could not shelter himself behind the claim that it was an opinion. Taken in connection with the alleged statements of the secretary and the circumstances of the case, a court might reasonably

find that the conduct was deceitful and fraudulent. The law gives special favors to such associations as these. It permits them to charge high rates of interest and to escape the payment of taxes—privileges denied to banks and other similar institutions. This is upon the theory stated, viz., that the poorer classes may be able to obtain homes. Experience has proved that such associations have not been free from the baleful influence of the desire for money-getting, and some—including this association—have eliminated fair competition, and required minimum bonuses of a high percentage, and, as we have seen in this case, resorted to advertising, which, while well designed to appeal to the cupidity of its patrons, is also liable to inspire undue expectations and confidence. This should not be countenanced. We are of the opinion that the finding of the circuit judge was warranted by the proofs. *Myers* v. *Building Ass'n*, 117 Mich. 392; *National Mut. Bldg. & Loan Ass'n* v. *Burch*, 124 Mich. 62.

The decree is affirmed, with costs.

MOORE, C. J., and GRANT and CARPENTER, JJ., concurred. MONTGOMERY, J., concurred in the result.