DIETERLE v. ANN ARBOR PAINT & ENAMEL CO.

1. CORPORATIONS — FOREIGN CORPORATIONS — PURCHASE OF FRANCHISES.

Sections 8572, 8573, 3 Comp. Laws, authorizing corporations organized under the laws of this State to sell their property and franchises to other corporations organized for similar purposes, do not authorize the purchase by a domestic corporation of the property and franchises of a foreign corporation.

2. SAME — STOCKHOLDERS — PAYMENT FOR STOCK — LIABILITY FOR CORPORATE DEBTS.

Where the articles of a corporation contain no suggestion that it is the successor of an existing corporation, payment of their subscriptions in the stock of a previously existing corporation is no defense to stockholders sued by a creditor of the corporation to enforce their liability for the unpaid portion of their subscriptions for stock.

3. SAME — PART PAYMENT.

Where the original shareholders paid their subscriptions to the stock of a corporation by transferring such interest as they had in a corporation which was insolvent, they should be held liable for the full amount of their subscriptions, if necessary to satisfy creditors.

4. SAME—ENFORCEMENT OF LIABILITY—EVIDENCE.

On a bill by a creditor to enforce the liability of stockholders for the unpaid portion of their stock, evidence examined, and *held*, to show that certain defendants were subscribers to the stock and not purchasers of it from other stockholders.

5. SAME—FRAUD—STATEMENT OF OPINION.

The mere expression by stockholders and promoters of a favorable opinion as to a corporation and its business outlook to a subscriber to the stock do not amount to such fraud as will release the stockholder from his subscription.

6. SAME—FRAUD—REPUDIATION OF SUBSCRIPTION.

A stockholder whose name does not appear among the original incorporators, and has never appeared among the list of stockholders, to whom no stock was ever issued, and who has never participated in any of the meetings except the one at which he repudiated all further liability upon his subscription, is not estopped as to creditors from setting up fraud as a defense to a suit to enforce his liability as a stockholder.

Appeal from Washtenaw; Kinne, J.   Submitted October 11, 1905. (Docket No. 40.)   Decided March 27, 1906.

Bill by Ernest A. Dieterle against the Ann Arbor Paint & Enamel Company, William G. Henne, William F. Breakey, Louis W. Schnierle, and others, to enforce a liability for unpaid subscriptions to the capital stock of defendant corporation, and for the appointment of a receiver.   From a decree dismissing the bill, complainant appeals.   Affirmed as to defendant Breakey, and reversed as to the other defendants, and decree entered for complainant.

*J. W. Bennett* and *Arthur Brown*, for complainant.

*A. J. Sawyer & Son*, for defendants Henne, Breakey, and others.

*George W. Sample*, for defendants Schnierle and others.

MOORE, J.   This is a bill filed by a judgment creditor of the Ann Arbor Paint & Enamel Company, to have the

original subscribers for stock and subsequent stockholders of said company held liable pro rata for the payment of the indebtedness to complainant, and of all other creditors of said corporation, and for the appointment of a receiver to bring about that result. No other creditor has joined in the proceeding. The bill of complaint was dismissed in the court below. The case is brought here by appeal. The defendant company was organized in March, 1902, with the following statement in its articles of association:

"Article 3. The capital stock of the corporation hereby organized is the sum of twenty five thousand dollars, and the number of shares thereof is 2,500, of the par value of ten dollars each.

"Article 4. The amount of said stock actually paid in at the date hereof is the sum of seven thousand dollars, being 28 per cent. of said capital stock."

Its stockholders were stated therein to be as follows:

| | | |
|---|---|---|
| Wm. G Henne | Ann Arbor | 30 shares. |
| J. W. Haas | " | 15 shares. |
| Louis J. Lisemer | " | 10 shares. |
| William J. Aprill | " | 13 shares. |
| Henry C. Exinger | " | 25 shares. |
| Charles L. Miller | " | 12 shares. |
| Sam C. Andress | " | 10 shares. |
| Alber Weimer | " | 7 shares. |
| Otto C. Andress | " | 10 shares. |
| Charles Wuerth | " | 12 shares. |
| Otto Schaible | " | 10 shares. |
| William Binder | " | 8 shares. |
| Louis W. Schnierle | " | 10 shares. |
| John H. Gersting | " | 5 shares. |
| John H. Gersting, trustee | " | 95 shares. |
| Fred J. Schleede | " | 10 shares. |
| George Spathelf, Jr. | " | 15 shares, |
| L. C. Weinmann | " | 15 shares. |
| Thomas J. Rice | " | 500 shares. |
| A. Levy | " | 5 shares. |
| M. L. Belser | " | 10 shares. |
| Thomas J. Rice, trustee | " | 1,673 shares. |

Complainant claims the statement that there was $7,000 of the stock actually paid it was not true. He asks that

the following original incorporators be held for the several amounts mentioned:

| | |
|---|---:|
| Wm. G. Henne | $300 00 |
| Wm. J. Aprill | 125 00 |
| H. C. Exinger | 75 00 |
| C. L. Miller | 50 00 |
| L. W. Schnierle | 37 50 |
| F. J. Schleede | 80 00 |
| Geo. Spathelf, Jr. | 125 00 |
| L. C. Weinmann | 150 00 |
| M. L. Belser | 37 50 |

—upon the theory that none of this money came to the treasury of the Ann Arbor Paint & Enamel Company. He also claims that Koch Bros. should be held for $60, Mr. Lansky for $20, and Dr. Breakey for $600, upon unpaid portions of their subscriptions made for stock after it was incorporated.

The original stockholders defend upon two grounds:

*First.* That this company is the Magic Manufacturing Company reorganized or merged in the defendant company, that the stock the stockholders received in the new company was the equivalent of the stock they owned in the old company, and they were entitled to have credited thereon all the money that they had paid for stock in the old company.

*Second.* (We quote from brief of counsel.) "The persons who organized the Ann Arbor Paint & Enamel company were the directors and stockholders of the Magic Manufacturing Company, and were creditors of that company to the amount they had paid for their stock or paid toward their stock, and, when the reorganization was decided upon, these were claims against the new company which it could not repudiate, but which it had assumed and agreed to pay. In consideration of the agreement all the property of the Magic Manufacturing Company, including the balances due upon the subscriptions for stock in that company, and the advertising matter and the pretended formulas were transferred to the new company. Therefore, the credits by the reorganized company to each stockholder in the old company for the amount he had paid on his stock in the old company as a payment pro tanto for an equal amount of stock in value in the

new company, was a liquidation and satisfaction of a debt of the new company, and it is the universal rule that the satisfaction of debts from the corporation is an equivalent for the issue of stock except where the payment in cash is made necessary by the statute under which the corporation is organized.  *  *  *

" We submit therefore, in the light of these authorities that the stockholders of the Ann Arbor Paint & Enamel Company who were subscribers for stock in the Magic Manufacturing Company and who had fully paid for their stock and received in lieu thereof the stock of the reorganized company of the same amount in value as the stock they held in the original company, and the subscribers for stock in the Magic Manufacturing Company who received credit in the new company for the amount they had paid upon their stock subscriptions in the old company, and paid the balance of the face value of their stock in full in the new company, are not indebted to the Ann Arbor Paint & Enamel Company, and the creditors of either company have no claim as against them for any unpaid balance upon their stock."

It becomes necessary, to pass intelligently upon these several claims, to inquire about the Magic Manufacturing Company. This company was organized under the laws of West Virgina in November, 1901. It ostensibly had a capital of $350,000. It never paid any franchise fee in this State, and had as stockholders all of the original stockholders in the defendant company against whom any relief is asked here. It was promoted by one Maloney to manufacture a product according to an alleged secret formula of one Rice who lived at Ann Arbor, and to whom $50,000 in stock was to be issued for the formulas. Nearly all the money which was paid in found its way to Mr. Maloney and not to the treasury of the Magic Manufacturing Company. Its assets when the defendant company was organized, outside of the formula of Mr. Rice, was estimated, and that was probably their full worth, at $565. Its liabilities were upwards of $1,000. Mr. Maloney, the promoter of the old company, received the following sums: From—

| | |
|---|---|
| William G. Henne | $250 00 |
| L. C. Weinmann | 150 00 |
| H. C. Exinger | 75 00 |
| W. J. Aprill | 125 00 |
| George Spathelf, Jr. | 125 00 |
| F. J. Schleede | 80 00 |
| M. L. Belser | 37 50 |
| C. L. Miller | 70 00 |
| L. W. Schnierle | 37 50 |

Upon the organization of the new company Mr. Rice received for his formulas $5,000 of full paid stock, and this made up part of the $7,000 said to have been fully paid. To get rid of Mr. Maloney, both as to his interest in the Magic Manufacturing Company and in the Rice formulas, $400 in cash of the new corporation's funds was later paid to him. It later turned out that the alleged formulas of Mr. Rice were worthless.

The only statute we can recall, and counsel do not call our attention to any other, authorizing a corporation to organize with power to buy the property, franchise, rights, and privileges of another corporation is found in sections 8572, 8573, 3 Comp. Laws. These provisions do not apply to the purchase of the property, franchise, rights, and privileges of a foreign corporation.

There is not a suggestion made in the articles of the new association that it is the successor to the Magic Manufacturing Company. If one proposing to extend credit to defendant company had consulted its articles of association, he would have found no suggestion that the $7,000 said to be paid in was made up of a worthless formula and the surrender of stock in an insolvent corporation. We think the defendant corporation cannot be said in a legal sense to be the successor of the Magic Manufacturing Company. In any event that defense cannot be interposed as to creditors.

The next question requiring attention is: Did the original shareholders pay in $7,000 as stated in the articles of association. So far as concerns the original shareholders against whom liability is asked, to the extent thereof, the

payments consisted in such interest as they had in a corporation which was utterly insolvent, and the assets of which were exceeded by its liabilities. There was no statement in its articles of association as already appears, as to how the $7,000 alleged to have been paid in was paid. It that respect the case differs from the case cited by counsel. *Young* v. *Erie Iron Co.*, 65 Mich. 111. In that case it was said in so many words:

> "It must be considered as well settled that corporators cannot agree among themselves that property worth only $80,000 shall be treated as worth $422,000, and count, at that sum, as so much capital stock paid in, and then proceed to make their shares as fully paid up and nonassessable upon such false basis, as such action would be clearly a fraud upon the creditors."

Though it was held in that particular case that no fraud was perpetrated. In the case at bar, however, there was nothing to indicate to creditors of the defendant company that no cash was paid in, and that the assests consisted wholly of an interest in an insolvent company, and in a secret formula which none of the shareholders except Rice had ever seen, and which he knew to be a fraud. However much the original shareholders may have acted in good faith as to the creditors, what was done was as to them a fraud. The case is within *Moore* v. *Elevator Co.*, 122 Mich. 48; *McBryan* v. *Elevator Co.*, 130 Mich. 111. The solvent original incorporators should be required to pay their subscriptions in full if necessary to satisfy the complainant creditor.

We now come to the status of the three defendants who subsequently subscribed for stock and did not pay for it in full. The claim of counsel, that they bought from other stockholders shares of stock instead of subscribing for stock of the defendant corporation, is not established. It is inconsistent with their testimony and what they did. March 19, 1902, Koch Bros. subscribed in writing for 25 shares of stock; on April 8th Dr. Breakey subscribed for 100 shares; and on April 18th Mr. Lansky subscribed for

5 shares. Each of them paid in part for the stock subscribed. Mr. Lansky has not appeared in the case. It does not appear what occurred when he subscribed and he should be held to his subscription. On the part of Koch Bros. it is insisted their subscription was obtained by means of fraud. Giving the testimony of Mr. Koch the most favorable construction possible, the most that can be said of it is that Mr. Lisemer expressed a favorable opinion as to the corporation and its business outlook, but his testimony falls far short of showing such fraud as would release Koch Bros. from their subscriptions.

Dr. Breakey claims he should be relieved because while his subscription reads 100 shares, it was agreed he should not be obliged to take more than 40 shares, and that he has paid for them in full; and second, because the subscription was obtained by means of false and fraudulent statements, and because thereof he repudiated the balance of his subscription as soon as he learned of the fraud. We do not deem it necessary to inquire whether the written subscription can be contradicted by oral testimony, for reasons which will appear later. The statements made to Dr. Breakey were not confined to expressions of opinion as to the value of the formula or the outlook of business for the corporation. Untruthful statements were made as to existing conditions which we do not deem it necessary to recite, but which we think establish beyond any question that the subscription was obtained by means of fraud. The case is unlike *Duffield* v. *Wire & Iron Works*, 64 Mich. 293, where it was held by an equally divided court that as the plaintiff, to whom stock had been issued, had attended the stockholders' meetings, had voted to increase the capital stock, and had voted and received dividends, that under the facts disclosed by the record he was estopped from rescinding his contract of subscription on the ground of fraud. Nor is it the case of *Bissell* v. *Heath*, 98 Mich. 472, where stock was purchased by Heath, and a certificate issued to him upon which he received dividends for several years. As already

appears, Dr. Breakey's name did not appear among the original incorporators. His name never appeared among the list of stockholders. No stock was ever issued to him. He did not participate in any of the meetings except the one in which he repudiated all further liability upon his subscription. We think he has done nothing to mislead the creditors or to estop him from questioning any further liability upon his subscription.

The decree will be affirmed as to Dr. Breakey, with costs; it is reversed as to the other defendants, whose contentions have been discussed in this opinion, with costs of both courts; and a decree may be entered in accordance with this opinion.

McALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.