WARREN v. FEDERAL LIFE INSURANCE CO.·

1. CONTRACTS—TERMS AND CONDITIONS—RESCISSION.
    Where a person accepts a contract and acts upon it he is
    bound to know its terms and conditions, and he cannot
    accept its benefits, or a part thereof, and reject the bal-
    ance, or plead ignorance of its conditions.

2. INSURANCE—LIFE INSURANCE—OPINIONS—FRAUD.
    Statements by an insurance company, which has reinsured
    a life policy, that dividends ought to operate to reduce
    very materially the charges against the policy, even
    though they did not entirely offset them, constitute merely
    an expression of an opinion as to what might occur in the
    future and cannot be made the basis of an action for
    fraud, nor for the recovery of the premiums paid.

3. SAME—PAYMENT OF PREMIUMS—VOLUNTARY PAYMENTS.
    Payments of premiums by an insured on a life policy are
    voluntary, where the insured is during all the period
    insured and has the benefits of the policy, and they can-
    not be recovered back.

4. PAYMENT—VOLUNTARY PAYMENTS—PROTEST.
    Payment made under protest does not change a voluntary
    into an involuntary payment.

5. INSURANCE—LIFE INSURANCE—REINSURANCE—STATUTES.
    A reinsurance contract is not within the provisions of 2
    Comp. Laws, § 7217 (2 Comp. Laws 1915, § 9351), pro-
    viding that life insurance companies shall not make any
    insurance contract with any citizen of the State which
    shall not state distinctly the amount of life benefits, man-
    ner of payment, period of continuance and amount of
    premiums, and that any person who may have paid money
    therefor may recover same back at any time within six
    years from date of payment.

6. SAME.
    Even if a reinsurance contract is within the provisions of
    2 Comp. Laws, § 7217 (2 Comp. Laws 1915, § 9351), it
    complies with the statute where the original policy states
    not only the amount of insurance, but the monthly pre-
    mium, and the insurer assumed all obligations of the

policy, subject to the terms of a reinsurance contract between it and a third insurance company with which the risk had been previously reinsured, and the legality of the contract is unaffected by a demand of a greater than the specified premium.

7. SAME—LIFE INSURANCE—REINSURANCE — NONCOMPLIANCE WITH STATUTE—ESTOPPEL.

In an action against an insurance company, which had reinsured a life risk, to recover premiums paid, *held*, that plaintiff was estopped from invoking the provisions of 2 Comp. Laws, § 7217 (2 Comp. Laws 1915, § 9351), relating to the requirements of life insurance policies and giving the right of action for recovery of premiums paid under policies not complying with the statute.[1]

Error to Eaton; Smith, J. Submitted June 8, 1917. (Docket No. 21.) Decided September 27, 1917.

Assumpsit by Frederick G. Warren against the Federal Life Insurance Company for premiums paid on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Cummins, Nichols & Rhoads* (*C. A. Atkinson*, of counsel), for appellant.

*Frank A. Dean*, for appellee.

STONE, J. This is an action in assumpsit to recover premiums paid by plaintiff to the defendant upon a life insurance policy. The case was tried by the court without a jury, and the trial court made a written finding of facts and law, and rendered a judgment for the plaintiff in the sum of $1,559.06, damages, with costs of suit.

The main facts are not in substantial dispute, and they are stated by the defendant and appellant substantially as follows:

On October 15, 1898, the Merchants' Life Insurance

---

[1] On the question of liability of reinsurer, see notes in 8 L. R. A. (N. S.) 845; 44 L. R. A. (N. S.) 317.

Company of Detroit issued its policy upon the life of the plaintiff for $2,000. The company was what is termed "an assessment company." The premium specified in the policy was $4.20 per month. It contained a clause giving the right to the company, should any emergency arise, through epidemic or otherwise, whereby the premiums should be insufficient to meet the mortuary requirements, to levy additional premiums to meet such emergency. This clause is referred to in the record as the "assessment" or "safety" clause.

On November 1, 1900, the plaintiff was reinsured in the Union Life Insurance Company of Indiana. That company accepted and assumed all liability arising under the policy issued by the first-named company, without any qualifications or restrictions. That was also an assessment company.

On July 16, 1904, the plaintiff was reinsured by the defendant, the Federal Life Insurance Company. It is not an assessment company, but is what is known as an "old-line," or "legal reserve company." The defendant assumed the policy of the Union Life Insurance Company only in accordance with the contract of reinsurance between it and the said Union Life Insurance Company made on the same day. The certificate issued to the plaintiff by the defendant was substantially as follows:

"This policy of reinsurance is issued to Frederick G. Warren, to be attached to certificate or policy No. 5510 of the Union Life Insurance Company of Indiana, and subject to all the provisions of the contract of reinsurance between said Union Life Insurance Company and this company, dated July 16, 1904, constitutes policy No. 7184 of the Federal Life Insurance Company of Chicago, Illinois.

"Whereas, the said Federal Life Insurance Company does hereby assume the foregoing certificate or policy of said Union Life Insurance Company in ac-

cordance with the terms of said reinsurance contract; Now therefore, this policy and the said certificate to which it is to be attached, constitute the holder thereof, a policy holder of the said Federal Life Insurance Company, and the said Federal Life Insurance Company hereby assumes and guarantees any liability which may hereafter be established on account of such original policy or certificate, subject to the terms and conditions hereof, and of said reinsurance contract; provided that all premiums required to maintain such policy or certificate in force shall be paid to said Federal Life Insurance Company, as provided in the said original policy, or certificate, and said reinsurance contract. No change of policy or certificate further than the attachment of this reinsurance policy to said policy or certificate of the said Union Life Insurance Company, is necessary in order to bind the said Federal Life Insurance Company to the payment of the same, subject to the provisions hereof, and of the said reinsurance contract."

The reinsurance contract between the defendant and the Union Life Insurance Company, dated July 16, 1904, was received in evidence, and is contained in the record. Article 22 of this agreement expressly provided that the "assessment" or "safety" clause, above referred to, should be eliminated, thereby placing the policy upon an old-line, or legal reserve basis. Article 21 of said contract provided that the necessary reserve not having been accumulated for the proper protection of the policies reinsured and transferred thereunder, the defendant should be authorized to charge against such policies assumed by it a reserve lien, based upon the American table of mortality, with 3½ per cent. interest. This same clause provided that in cases where the premium or assessment theretofore paid by any policy holder in the Union Life Insurance Company was less than the premium rate of the Federal Life Insurance Company for a policy of the same amount and similar in form, then the defendant was authorized to require the payment in cash of the dif-

ference in premiums, or to charge the same against said policies, as an additional lien, from and after the date of the contract. The plaintiff testified that he accepted all of these policies, including the one issued by the defendant.

On the same day that the insurance contract was made and the certificate of reinsurance issued to the plaintiff, the defendant sent a letter to plaintiff, advising him of his reinsurance, and stating that such reinsurance was subject to the terms of the contract, between the Union Life Insurance Company and the defendant, dated July 16, 1904, and further advising the plaintiff that the defendant was, and always had been, strictly an old-line legal reserve company. This letter the plaintiff admits he received, about the time that he received his policy of reinsurance. On the same date, the Union Life Insurance Company issued a circular letter to its policy holders, advising them of the reinsurance in the defendant company, and stating that the assessment clause above referred to had been eliminated from each policy, and that all such policies were placed upon a legal reserve basis. This letter the plaintiff testified he must have received. It appeared in evidence that the plaintiff was a man of intelligence and business experience, and had been engaged in the life, accident, and fire insurance business.

On August 2, 1904, the plaintiff, in a letter to the defendant, acknowledged the receipt of his policy and stated:

"I see that policy is subject to all the provisions of the contract between the Union Life and your company; hence, not knowing what those provisions are, I would be pleased if you would inform me."

On August 5, 1904, defendant's secretary replied to this letter by a letter which the trial court characterized as of the "spider and fly" grade. The substance of it was as follows:

"We have your favor of recent date making remittance for monthly premium on policy 7184. Proper receipt for the same is herewith inclosed.

"The contract about which you make inquiry was passed upon by a committee named by the policy holders of the Union Life, and on this committee was an expert insurance man and two leading attorneys of the State of Indiana. After a careful and extended consideration, the contract was given the unanimous approval of the committee, and thereafter executed by the officers of the company in compliance with instructions given them by the policy holders in meeting assembled. The assessment or safety clause formerly embraced in the Union Life policies is absolutely eliminated, and everything in connection with the policies will hereafter be based upon definite and specific guaranties. Each policy holder will hereafter be allowed thirty days of grace for the payment of his premiums, without regard to whether this was provided for in his original policy. The operation of the contract is to place each policy, as nearly as possible, upon the same basis, as would have been the case had it been issued originally by our company which is now and always has been a legal reserve company. In placing the Union Life policies upon a legal reserve basis, they are surrounded by all of the protection which the legal reserve laws give to policy holders in 'old-line' life insurance companies."

There was no further correspondence between the parties for nearly a year, and the plaintiff continued to pay the premiums of $4.20 per month as provided in his original policy.

Frank Hill, an agent of the defendant, testified that on April 24, 1905, he visited the plaintiff at Charlotte, and then explained to him fully concerning his policy, the liens thereon, and the difference in the premiums, and the steps which the plaintiff might take to relieve his policy from the liens. He could not remember whether he showed the plaintiff the reinsurance contract or not. He identified certain cards, memorandum, and reports which he made at that time, and

which were filed with the company, in which the figures with reference to the status of the policy, and the liens thereon, and the difference in the premiums between the Union Life and the Federal Life were clearly stated. The plaintiff was at first inclined to deny this claimed visit of Mr. Hill, but afterwards stated that he could not remember it, but it was undisputed that on May 22, 1905, a little less than 30 days after Mr. Hill's claimed visit, the plaintiff made out an application for the removal of the impairment lien. There is no doubt that Mr. Hill visited the plaintiff, and explained these liens; otherwise there is no accounting for the fact that within a month thereafter the plaintiff made formal application to have the impairment lien removed. There was then some correspondence between the plaintiff and the medical examiner of defendant relative to a discrepancy in plaintiff's age. On June 6, 1905, the plaintiff was advised by the defendant that the impairment lien against his policy had been removed, and a credit of $21.60, formerly deducted from such impairment lien, had then been credited to plaintiff's reserve lien. Following this, no further correspondence was had between the parties until on or about February 8, 1907. In the meantime plaintiff continued to pay the old premium of $4.20 per month.

On February 8, 1907, the defendant wrote to the plaintiff, stating that after a careful computation made of the expense of carrying his policy, it had been shown that the cash payment which he had been paying theretofore, which was the old Union Life rate, was insufficient to meet the current cost of carrying his policy, and that the company was obliged to notify the plaintiff that it would be necessary thereafter for him to pay in cash the full Federal premium of $11.92 monthly. In this letter the defendant also stated that the difference between the Union Life and the Federal

Life premiums had been theretofore charged as a lien against the plaintiff's policy, and quoted from article 21 of the reinsurance contract, which granted to the defendant the right to require the payment in cash of the said difference in premiums, or to charge the same against the policy as an additional lien. It was also stated in this letter that if the plaintiff desired to exchange his policy for a new one, with premiums as above indicated, the company would arrange to do so. It is clear from the record that, after receiving defendant's letter of February 8, 1907, the plaintiff replied to such letter, and remitted the increased premium as requested.

The letter of March 5, 1907, from the defendant to the plaintiff, seems to be the letter upon which this action for alleged fraud and deception is based. In this letter the plaintiff was again advised specifically as to the lien for reserve that had been charged against his policy, with interest on the same, and of the lien arising because of the difference in premium between the Union premium and the Federal premium, with the interest on the same. These liens, with the interest at that time, as stated, amounted to $689.46. It is not claimed by plaintiff that these liens were not in strict accord with the reinsurance contract. This letter contained this clause:

"Your policy is a participating policy and not a non-participating policy, as you may suppose. At the end of five years from the date of its reinsurance by this company, we agree to distribute a dividend to the persistent policy holders who are then in good standing, and at the end of each five-year period thereafter. This dividend, in your case, ought to operate to reduce very materially your charges, even though it does not entirely offset them."

The record shows that the plaintiff's policy was afterwards credited with certain dividend additions, amounting to $53.44.

On March 7, 1907, plaintiff replied to defendant's letter of March 5th, stating that he did not fully understand defendant's proposition, saying:

"You say that my insurance is carried upon your books at age 55, that being my age when policy was issued by the Union Life. If I am to pay $11.92 monthly, besides a lien upon my policy, wherein is the benefit to me of continuing the policy?"

The plaintiff in this letter then discussed the question of taking out a new policy, and made some inquiry as to premiums. On March 9, 1907, the defendant replied to this letter, quoting a premium of $123.88 for age 60, stating:

"There would be the reserve for the three years premium past due, which would amount to $263.76. This reserve would be charged against your policy, bearing 5% interest annually."

This same letter stated that if the plaintiff desired to avail himself of such policy, it would be necessary to have the reserve lien placed against the same, as stated. The matter seems to have been dropped at this point, and there was no further correspondence between the parties until December 6, 1915, a period of over 8 years. During all of this time, the plaintiff continued to pay the monthly premiums of $11.92, and made no objection or protest of any kind, as to such payments; and during all of this time, of course, the plaintiff was insured for $2,000, less the liens that existed against the policy. On December 6, 1915, plaintiff addressed a letter to the defendant, asking it to inform him as to the present standing of his policy, and as to the amount of the dividends accrued thereon, etc.

On December 8, 1915, the defendant replied to this letter, advising the plaintiff fully as to the status of his policy. From this letter it appears that the only difference in the condition of the policy on December

8, 1915, and March 5, 1907, was that on December 8, 1915, the policy had been credited with a dividend addition of $53.44, and charged with the accumulated interest on the reserve liens. So that where in 1907 the total charge for liens and accumulated interest against the policy was $689.46, on December 8, 1915, it was $976.86, the difference arising entirely from the items of accumulated interest on the liens against the policy. This letter was replied to by the attorney for the plaintiff, demanding the return of all the premiums paid, and he quoted from the clause in the letter of March 5, 1907, that the dividend in plaintiff's case "ought to operate to reduce very materially his charges, even though it did not entirely offset them," and that the plaintiff, believing these representations to be true, had continued to pay the premiums due on his policy.

The defendant proposed extended amendments to the findings of fact and law, which were all refused by the trial court, and exceptions were duly filed to such refusal. Exceptions were also filed to the findings of fact, for the reason that such findings were against the clear weight of evidence, and also that the findings of fact did not support the judgment. These questions and many others are raised by the assignments of error, on defendant's appeal.

It is said by appellant that the principal questions involved in the case are:

(1) Do the facts in the case give rise to any cause of action on the ground of fraud or misrepresentation, whereby the plaintiff is entitled to recover insurance premiums paid by him?

(2) Is the reinsurance contract of the defendant in violation of section 7217, 2 Comp. Laws (2 Comp. Laws 1915, § 9351), and, if so, has the plaintiff a right to recover premiums by reason thereof?

1. It is urged in argument by the appellant that the policy contract was fair. It clearly appears that the

defendant company was what is known as an old-line company; that is, it was required to maintain a legal reserve. All of the previous companies in which the plaintiff had been insured were assessment companies, containing "assessment" or "safety" clauses. It was provided in the contract that this clause should be eliminated, and that the policies should be placed upon a legal reserve basis. The defendant, under its contract with the Union Life, took over the policy holders at the age at which they were insured in the Union Life. The plaintiff had been carried in the last-named company at the age of 55 for about 4 years, at a rate of premium which would not create any legal reserve for that period of time. It was necessary, therefore, for the defendant, in order to comply with its charter, and the law, to charge plaintiff's policy with a lien equivalent to the legal reserve for that period of time, and which would have been created by the payment of the larger premium had the plaintiff been insured in the defendant company in the first instance.

It appears also that by the terms of the reinsurance contract, the defendant had the right to charge as a lien against plaintiff's policy the difference between the Union Life rate of $4.20 per month and the regular Federal rate of $11.92 per month, or, at the option of the defendant, it might require the difference in premium to be paid in cash. Not only was this contract fair to the plaintiff, but, as the evidence showed, it was necessary in order for the defendant to comply with its charter and the statutes of this State.

Complaint is made by the plaintiff that this policy contract was unfair because the longer plaintiff lived the less his beneficiary would receive. It is manifest that, in all life insurance policies the longer a man lives the less he gets so far as the difference between the face of his policy and his premiums are concerned, and in case there are liens existing against the policy,

and there are no payments of interest on the same it must follow that the longer a man lives and does not pay either the principal or interest on the liens against his policy, the less value will the policy be to his beneficiary upon his death. But that does not make the policy unfair.

It is also the claim of the plaintiff that he was never informed of the terms and conditions of the reinsurance contract referred to. The policy above set forth gave him explicit notice of the existence of such contract, and that his policy was expressly subject to all of its terms and conditions. He was also advised of the general nature of the contract. He was a man of experience and business judgment. When a man accepts a contract, and acts upon it as the plaintiff did in this case, he is bound to know its terms and conditions. He cannot accept the benefits of a contract, or part of it, and reject the balance, or plead ignorance of its conditions. *Converse* v. *Blumrich,* 14 Mich. 109 (90 Am. Dec. 230) ; *Sanborn* v. *Sanborn,* 104 Mich. 180 (62 N. W. 371) ; *Moore* v. *Township of Kenockee,* 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555) ; *Mishawaka Woolen Manfg. Co.* v. *Stanton,* 188 Mich. 237, 250 (154 N. W. 48, L. R. A. 1917B, 651), and cases there cited.

In his declaration the plaintiff bases his right of action, in so far as fraud is concerned, solely upon defendant's letter of March 5, 1907, and in particular upon that part of it stating that the dividends ought to operate to reduce very materially the charges against his policy, even though it should not entirely offset them. We do not think that such statement was a misrepresentation of any fact. It was but the mere expression of an opinion, and afforded no basis for an action of fraud or misrepresentation of fact. In *Myers* v. *Building Ass'n,* 117 Mich. 389 (75 N. W.

944), Justice MOORE, in speaking of similar statements, said:

"It is claimed on the part of the association that the statements of its officers as to how soon the shares of stock would attain their full value, and how low the rate of interest to the borrower would be, are but matters of opinion, and cannot be treated as fraudulent representations. We think this contention is sustained by the following authorities: *Lake* v. *Loan Ass'n,* 72 Ala. 207; *Hammerslough* v. *Savings Ass'n,* 79 Mo. 80; *American Building & Loan Ass'n* v. *Bear,* 48 Neb. 455 (67 N. W. 500)."

See, also, *Bristol* v. *Braidwood,* 28 Mich. 191.

Counsel for plaintiff claims that the instant case is governed by *Stoddard* v. *Loan Ass'n,* 138 Mich. 73 (101 N. W. 50). A reference to that case will show that the cases are distinguished. In fact that case refers to the *Myers Case* with approval. In Smith on Frauds, § 7, p. 17, that author says:

"Representations having reference to the future merely, however much relied upon, do not constitute a cause of action or a defense."

Many other cases in other jurisdictions are cited by defendant in support of this doctrine. In the very nature of the statement it could be nothing more than the expression of an opinion as to what might occur in the future, and under the law cannot be made the basis of an action for fraud, nor for the recovery of the premiums plaintiff paid to defendant. *Dieterle* v. *Enamel Co.,* 143 Mich. 416 (107 N. W. 79).

We are of the opinion also that under all of the authorities the payments made by the plaintiff were all voluntary payments. He was during all of the period insured, and had the benefits of the policy. Under such circumstances the payments cannot be recovered back. *Wheeler* v. *Hatheway,* 58 Mich. 77 (24 N. W. 780); *Tompkins* v. *Hollister,* 60 Mich. 485 (34 N. W. 551); *Francis* v. *Hurd,* 113 Mich. 250, 256 (71

N. W. 582) ; *Vereycken* v. *Vanden Brooks,* 102 Mich. 119 (60 N. W. 687).

Payment made under protest does not change a voluntary into an involuntary payment. *City of Detroit* v. *Martin,* 34 Mich. 170 (22 Am. Rep. 512) ; *Congdon* v. *Preston,* 49 Mich. 204 (13 N. W. 516). Many other cases outside of Michigan might be cited to the same effect.

2. It is the claim of the plaintiff that he has a right to recover by virtue of the provisions of section 7217, 2 Comp. Laws (2 Comp. Laws 1915, § 9351). This statute provides that life insurance companies shall not make any insurance contract with any citizen of this State, "which shall not distinctly state therein the amount of such life benefits, the manner of payment, the period of the continuance thereof and the amount of the annual, semi-annual or quarterly premium" and that:

"Any person who may have paid moneys therefor, shall be entitled to recover the same back, from the person to whom it was paid * * * by action of assumpsit to be brought at any time within six years after such payment."

It is the claim of the defendant, not only that a reinsurance contract is not within the meaning of this statute, but that if it were, the policy contract in this case complies in every respect with the provisions of the statute. It is urged that the original policy in the Merchants' Life Insurance Company states, not only the amount of the insurance, but the monthly premium; that the certificate of reinsurance which defendant issued assumed all of the obligations of this contract or policy, subject to the terms and conditions of the reinsurance contract between it and the Union Life Insurance Company; that so far as the contract itself was concerned, it specified upon its face the premium to be paid, and that if under its reinsurance

contract with the Union Life, the defendant demanded of the plaintiff more than was specified in the policy contract, that demand, in and of itself, did not affect the legality of the contract in so far as this statute is concerned. We are of the opinion that this position of the defendant is correct, and, further, that under the circumstances of this case the plaintiff should be held estopped from invoking the provisions of the statute.

By section 15 of chapter 18 of the judicature act (Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12587), it is provided that in cases tried before the court, either party may file exceptions to the findings of facts, that such findings are against the clear weight of the evidence, and may assign error upon such exceptions, and upon appeal the same shall be reviewed by this court.

The defendant has invoked this statute. We are of opinion that the findings of facts in the court below were against the clear weight of the evidence. For this and the other reasons stated herein the judgment of the court below is reversed, with costs to the appellant, and no new trial will be granted.

KUHN, C. J., and BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.