CRAWFORD v. PIERCE.

BANKRUPTCY — TRUSTEE — CORPORATIONS — LIABILITY OF STOCK-HOLDERS FOR FRAUD—CREDITORS.

In a suit against stockholders by a trustee in bankruptcy of a corporation to enforce a liability for fraud in the issuance of stock on behalf of creditors, where it appears that defendants in organizing said corporation turned in a liability of $6,000 of a former corporation as an asset of $35,000 in value and received stock therefor, they may not escape liability on the plea of good faith, in view of the fact that they actively participated in conducting the business of both corporations, and their conduct was a fraud upon those dealing with the corporation.

Appeal from Wayne; McDonald (John S.), J., presiding. Submitted October 6, 1922. (Docket No. 33.) Decided March 22, 1923.

Bill by Milo H. Crawford, trustee in bankruptcy of the Pierce-Hinsch Company, against James G. Pierce and others to enforce a liability for fraud in the issuance of corporate stock. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Welsh, Bebout & Kahn,* for plaintiff.

*J. O. Murfin,* for defendant Pierce.

BIRD, J. Plaintiff, on behalf of creditors of the Pierce-Hinsch Company, in his bill of complaint, charges fraud in the organization of the Pierce-Hinsch Company, and also in its subsequent management. This company was the outgrowth of a previous corporation, known as the Pierce-Hinsch Realty Com-

pany, which was formed in 1911 by defendants Pierce and Hinsch. The old company was engaged in buying and selling real estate and constructing houses. After it had been in operation about 18 months more capital was needed and the defendants arranged to reincorporate with a larger capital. To bring this about they incorporated a new company called the Allen Realty Company, with capital stock fixed at $60,000, of which defendants subscribed for $35,000 of the stock in the following proportions: Mr. Pierce 1,628 shares, Mr. Hinsch 1,627 shares, Mr. Luce 245 shares. These three parties became the directors of the new company. Mr. Pierce was elected president, Mr. Luce vice-president and Mr. Hinsch secretary and treasurer. They paid for their stock in the new company with assets of the old company which were represented to be of the value of $35,000. In order to bring this about the old company passed the following resolution:

"*Whereas*, the Pierce-Hinsch Realty Company, a corporation existing under the laws of Michigan and in business at the city of Detroit has successfully conducted its business since its organization, and

"*Whereas*, said Pierce-Hinsch Realty Company is possessed of certain real estate, land contracts, mortgages, merchandise, office furniture and fixtures, bills receivable, accounts receivable and other property, real and personal, both useful and necessary to the contemplated business and purposes of this corporation; and

"*Whereas*, each of the shareholders of this corporation is personally familiar with the property of said Pierce-Hinsch Realty Company and is acquainted with the value and earning power of said property and business as a going concern, and

"*Whereas*, said property and business thus established is of the reasonable value of thirty-five thousand (35,000) dollars, and

"*Whereas*, sundry individual residents of Detroit and vicinity have recently subscribed the sum of

twenty thousand (20,000) dollars and upwards as an investment in the stock of this corporation on condition and with the express understanding that the entire property of the said Pierce-Hinsch Realty Company both real, personal and mixed, should be purchased by this, the Allen Realty Company, at the valuation of thirty-five thousand (35,000) dollars, and

"*Whereas*, the said Pierce-Hinsch Realty Company has offered to sell, assign, deed, convey, transfer and set-over unto this corporation all its property consisting of real estate, land contracts, mortgages, furniture, fixtures, bills receivable, accounts receivable and all property and effects of every kind and description belonging to said Pierce-Hinsch Realty Company, a true and correct inventory of which showing description of each piece or parcel of property with incumbrance thereon, if any, and a true statement of the bills and accounts receivable and payable and other details of said business, is presented at this meeting marked Document A, all of which said assets including good will and trade name, the said Pierce-Hinsch Realty Company offers to assign and convey to this corporation, at the price of thirty-five thousand (35,000) dollars payable in 'fully paid non-assessable' capital stock of this corporation at par value, therefore,

"*Resolved*, that the stockholders of this corporation recommend that the board of directors thereof negotiate for and purchase from said Pierce-Hinsch Realty Company, the property so offered at the price and upon the terms above set forth, provided said board of directors shall deem said purchase proper and expedient.

"The foregoing resolution was put to vote and unanimously adopted, all stockholders present voting in the affirmative."

In pursuance of this resolution the entire assets of the old company were transferred to the new, for the consideration of $35,000, which paid for the stock subscribed by the defendants. Defendants then induced their business friends and acquaintances to subscribe several thousand dollars of the remaining $25,000. Soon after the formation of the new com-

pany its name was changed to the Pierce-Hinsch Company. The new company commenced business in March, 1913, and continued the business of the old company until some time in 1914, when it became financially unsteady, and as a result thereof an involuntary petition in bankruptcy was filed against the company in November, 1914. The company was subsequently adjudged a bankrupt. The claims filed and allowed exceeded $30,000, and the assets, when reduced to cash, amounted to only $1,320.83. An order was entered by the referee calling upon defendants to pay up their subscriptions on the stock they subscribed, and in the event of their failure to comply the trustee was authorized to bring suit to recover it. By virtue of this authority plaintiff instituted this suit.

The trustee contends that defendants committed a fraud upon the Allen Realty Company in issuing to themselves $35,000 in stock of the company without paying for the same, either in cash or property, and, therefore, they should now be compelled to pay for their stock.

Defendant Pierce answers this by saying that the defendants employed Adolph W. Ehrman, an accountant, to audit the books of the old company before its assets were turned over to the new company, and that this audit by him was relied upon. That it showed $19,000 in assets, and this, together with the item of $16,000 for good will, made up the $35,000, which was paid for the stock. It is further insisted that the entire proceedings were in good faith so far as he was concerned or knew.

1. The record shows that both Pierce and Hinsch were actively engaged in the affairs of the old company as well as the new. Mr. Hinsch was employed in keeping the books of the new company. Mr. Pierce was engaged in the real estate business. Both men

were familiar with the assets of both companies. They consulted together frequently about the affairs of the company, and dominated the business of the company. When the assets of the old company were turned over to the new company in payment of their stock, they should have been, and doubtless were, familiar with the assets and their value.

We are persuaded that the pretended assets of $35,000 turned over to the new company was really a liability of $6,000 and upwards, and that nothing of value was paid by either Pierce or Hinsch for his stock. Mr. Wray, the auditor, who examined the books of the old and new companies, came to this conclusion, and his conclusion does not appear to be seriously denied.

In view of this conclusion we are forced to believe that Pierce and Hinsch either deliberately and intentionally made the affidavit required by the statute, in which the value of the property was set forth under oath, or their management of the company's affairs had been so negligent and reckless that they did not know the true state of its affairs. Upon either theory they would be liable for the par value of the stock for which they had subscribed. The argument of counsel that Pierce had acted in good faith throughout cannot be accepted. There is some evidence of this, and it was shown by his later efforts to aid the company financially, but notwithstanding these efforts we cannot escape the conclusion that his sworn estimate of value was something more than mere error of judgment. It is improbable that two men who were as close to the business affairs of the company as these men were could err so in matters of judgment. Had both been engaged in other business and unacquainted with the business of the company, and given no time to its affairs, it might be plausibly urged that they were misled. We are aware that persons

may differ as to value of property turned into a corporation. This is not such a case. No property of value was turned in, nothing but a liability. If, under these circumstances, we are to say that organizers of a company may turn in a liability of $6,000 to a corporation for $35,000 in value, and escape the consequences of their fraudulent conduct on the plea of good faith, then the statute, which was enacted to be a protection to the public, may as well be abrogated, as it would no longer be of any force. It is also urged they were deceived by erroneous bookkeeping. It will be sufficient to say that we are not impressed by this claim. Under any view of the case the conduct of these men was a fraud upon those dealing with it and they should be held liable for the par value of their stock. *Dieterle* v. *Paint & Enamel Co.,* 143 Mich. 416; *McBryan* v. *Universal Elevator Co.,* 130 Mich. 111, 123 (97 Am. St. Rep. 453).

As was said in the last case cited:

"It would be a disgrace to the law if creditors, dealing with a corporation in reliance upon these statements, which they examine in the public offices, where they are on file, had no remedy. Justice and good morals require that they who make such false statements, whether they make them intentionally or, as in this case, recklessly, should respond in damages therefor."

Our conclusion is that both Hinsch and Pierce should be compelled, by order of the court, to pay par for the stock for which they subscribed or, at least, such a percentage as will satisfy the creditors. No decree will be made against defendant Luce, as he was not served with process. Plaintiff will recover his costs in both courts.

WIEST, C. J., and FELLOWS, CLARK, SHARPE, and STEERE, JJ., concurred. MCDONALD and MOORE, JJ., did not sit.