SCHOLZ v MONTGOMERY WARD & CO, INCORPORATED

Docket No. 80709. Argued October 2, 1990 (Calendar No. 1). Decided April 5, 1991.

Jane Scholz brought an action in the Kent Circuit Court against Montgomery Ward & Co., Incorporated, alleging age and religious discrimination and breach of contract. The plaintiff claimed that oral assurances by the defendant at the time of hiring that she would not be required to work on Sundays modified her subsequent written acknowledgment by completing a sign-off sheet supplied by the employer that she was an employee at will. The court, George R. Cook, J., entered judgment on a jury verdict for the plaintiff. Following trial, the defendant's motions for judgment notwithstanding the verdict or for a new trial were denied. The Court of Appeals, BURNS, P.J., and GRIBBS and R. I. COOPER, JJ., affirmed the rulings on the motions in an unpublished opinion per curiam, reasoning that *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579 (1980), does not permit an employer to unilaterally modify a contract, and concluding that because the question whether the defendant retained the right to unilaterally change the terms of the oral agreement with the plaintiff not to work on Sundays was one of fact, the jury reasonably could have concluded that the oral agreement remained in force (Docket No. 86118). The defendant appeals.

In an opinion by Justice RILEY, joined by Chief Justice CAVANAGH and Justices BRICKLEY, BOYLE, and GRIFFIN, the Supreme Court *held:*

The signing by an employee of a disclaimer providing employment at will, unless subsequently modified, permits termination of the employee for any or no reason.

1. Employers may provide employment at will by way of express disclaimers in statements of employment policies. In this case, as a matter of law, the plaintiff's employment relationship at the time of discharge was governed by the employer's disclaimer. Thus she was an employee at will, and unable to maintain an action for wrongful discharge.

2. Failure to obtain an explanation of a contract is ordinary negligence, estopping avoidance of the contract on the ground of ignorance. In this case, the plaintiff assented to the terms of

the employment agreement by signing the sign-off sheet and returning it to her employer. The disclaimer included in the sign-off sheet was unambiguous on the subject of discharge and comprehensive on the subject of termination. Regardless of whether an implied contract arose with respect to Sunday work, as a matter of law, it did not apply at the time of discharge because the express modified contract under the terms of the sign-off sheet was in effect at the time of her discharge.

Affirmed in part, reversed in part, and remanded for entry of judgment notwithstanding the verdict.

Justice LEVIN, writing separately, stated that modification of an employment contract, in general, is subject to the same rules of law applicable to the modification of other contracts. These rules seek to achieve a reasoned balance between competing values and policies and to protect and enforce the true agreement. There are no special rules of law designed to lighten the burden of an employer who seeks to modify an express oral agreement. Employers have full freedom of contract and managerial control; however, when they enter into an agreement with an employee, they give up something and generally obtain something worthwhile in return. The law recognizes the utility of and the employer's need for standardized agreements. Where, however, as in this case, before an agreement is standardized, a separate agreement is entered into with a person with whom a standardized agreement is later signed, rules of law designed to protect the enforceability of the earlier agreement of the parties come into play, if it appears, on an examination of all the facts and circumstances, that it continues to represent the true agreement of the parties. These rules should not be brushed aside or ignored.

Justice MALLETT took no part in the decision of this case.

*Pinsky, Smith, Fayette & Hulswit* (by *H. Rhett Pinsky*) for the plaintiff.

*Dykema, Gossett* (by *Charles C. DeWitt, Jr.,* and *Bruce G. Davis*) for the defendant.

Amici Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry,* and *Rachelle G. Silberberg*) for Michigan Manufacturers Association.

*Conboy, Fell, Stack, Lieder & Hanson* (by *Lloyd C. Fell*) for General Motors Corporation.

*Miller, Canfield, Paddock & Stone* (by *Diane M. Soubly*) for American Society of Employers, Motor Vehicle Manufacturers Association of the United States, Inc., Greater Detroit Chamber of Commerce, and Michigan State Chamber of Commerce.

*Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Lionel J. Postic*), and *Charles Gottlieb* for Michigan Employment Lawyers Association.

RILEY, J.

### I. INTRODUCTION AND FACTS

This case is a wrongful discharge/religious discrimination action brought against the defendant, Montgomery Ward & Co., Incorporated, by Jane Scholz, a former employee of defendant at its North Kent Mall Store in Grand Rapids, Michigan.

The Court held in abeyance defendant's application for leave to appeal pending decisions in *Bullock v Automobile Club of Michigan,* 432 Mich 472; 444 NW2d 114 (1989), and *In re Certified Question, Bankey v Storer Broadcasting Co,* 432 Mich 438; 443 NW2d 112 (1989). On May 2, 1990, we granted leave to appeal.[1]

The sole issue to be decided in this appeal is whether plaintiff had a contract not to be terminated for refusing to work on Sundays on the basis

---

[1] *Scholz v Montgomery Ward & Co, Inc,* 434 Mich 910 (1990).

of oral statements and circumstances surrounding her employment. We hold, as a matter of law, that at the time of her discharge plaintiff's employment relationship was governed by the employer's 1982 sign-off sheet, and that plaintiff was an employee at will. Thus, plaintiff cannot maintain an action for wrongful discharge. Accordingly, the decision of the Court of Appeals is reversed to the extent it found that plaintiff could bring an action for breach of contract, and the case is remanded to the trial court for entry of an order pursuant to this opinion.

The facts of this case are set forth in the Court of Appeals decision, unpublished opinion per curiam of the Court of Appeals, decided January 27, 1987 (Docket No. 86118):

> Plaintiff was hired by defendant as a sales person on August 31, 1970, at defendant's location at the North Kent Mall in northern Kent County. At the time of her hiring, she discussed Sunday working hours with the personnel director, Donald Hansen. At that time, the North Kent Mall store was not open for business on Sundays. Nevertheless, plaintiff indicated her desire not to work on Sundays. Hansen took the matter up with the store manager, Robert Bergman. Bergman indicated that, although he did not anticipate the store opening on Sundays, there would be no difficulty in honoring plaintiff's request in the event the store opened on Sundays. Hansen relayed this decision to plaintiff, who accepted a position with defendant.
>
> Four or five months later, the store opened for Sunday trade. Two years after that, plaintiff was asked to work on Sundays. She refused, citing religious convictions. The matter was dropped. Sometime later, in 1977, plaintiff was formally notified by defendant that she would have to work on Sundays. Plaintiff's pastor, Wesley A. Samuelson of Bethlehem Lutheran Church in Grand Rap-

ids, sent a letter to defendant indicating that plaintiff's religious convictions prevented her from working on Sundays. Although she was scheduled to work three Sundays in 1977, she refused. No action was taken by defendant. In 1982, defendant issued a policy manual. On the face of the manual, there was a sheet entitled "new employees sign-off sheet," which plaintiff signed on May 10, 1982. That sheet contained, inter alia, the following paragraph:

"I have read and fully understand the rules governing my employment with Montgomery Ward. I agree to employment with Montgomery Ward under the conditions explained. I understand these conditions can be changed by the Company, without notice, at any time. I also understand and agree that my employment is for no definite period and may, regardless of the time and manner of payment of my wages and salary, be terminated at any time, with or without cause, and without any previous notice."

In 1983, plaintiff was informed that if she refused to work on Sundays, she would be terminated. She responded by letter that it was her understanding at the time of hiring that she would not be required to work on Sundays. She was scheduled for work on Sundays, she refused to work on Sundays, and she was terminated. Defendant admits plaintiff had an excellent work record and that the sole reason for her discharge was her failure to report for Sunday work. [Slip op, pp 1-2.]

Plaintiff brought suit in Kent Circuit Court on January 16, 1984, against Montgomery Ward, alleging age and religious discrimination and breach of contract. A jury awarded her $8,250 on the religious discrimination claim and $16,503 on the breach of contract claim, plus costs, interest, and attorney fees. *Scholz, supra,* slip op, p 1.[2] Following the trial, defendant moved for a judgment notwith-

---

[2] By way of directed verdict in favor of defendant, the trial court dismissed count I of plaintiff's complaint alleging age discrimination.

standing the verdict[3] or, in the alternative, for a new trial.[4]

The trial court denied both motions. Defendant appealed, and the Court of Appeals affirmed the trial court's ruling on the motions, reasoning that *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980), does not permit an employer to unilaterally modify a contract. *Scholz, supra,* slip op, p 4.

The Court of Appeals concluded that since the question whether defendant retained the right to unilaterally change the terms of the oral employment contract with plaintiff was one of fact for the jury and not one of law for the trial court, the jury reasonably could have concluded that provisions of the 1970 oral contract remained in force. Therefore, the trial court properly denied the motion for judgment notwithstanding the verdict and similarly did not abuse its discretion in refusing to grant a new trial. *Scholz, supra,* slip op, pp 5-6.

II

A

In *Toussaint,* we recognized that employers may provide a contract of employment at will by way of express disclaimers in their employment policies.[5]

---

[3] The standard of review for a judgment notwithstanding the verdict is found in *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965). For further explanation, see *Hodgins Kennels, Inc v Durbin,* 170 Mich App 474, 479; 429 NW2d 189 (1988).

[4] The criteria in reviewing a motion for a new trial by this Court were reviewed in *Willett v Ford Motor Co,* 400 Mich 65, 70-71; 253 NW2d 111 (1977). For further explanation, see *People v Gallagher,* 116 Mich App 283, 291; 323 NW2d 366 (1982), lv den 414 Mich 936 (1982), cert den 459 US 1203 (1983).

[5] Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold

In *Valentine v General American Credit, Inc,*
420 Mich 256, 258-259; 362 NW2d 628 (1984), we
reaffirmed:

> Employers and employees remain free to pro-
> vide, or not to provide, for job security. Absent a
> contractual provision for job security, either the
> employer or the employee may ordinarily termi-
> nate an employment contract at any time for any,
> or no, reason.

In the instant case, plaintiff relies on the pre-
hiring statements made by Mr. Hansen, Montgom-
ery Ward's personnel director, to allege an express
contract that she was not required to work Sun-
days.[6] Plaintiff also relies on several instances
during her employment where defendant acqui-
esced in her refusal to work Sundays. Even if we
were to assume plaintiff had an express oral con-
tract with Montgomery Ward that she did not
have to work on Sundays, she reached a new

only that an employer's express agreement to terminate only
for cause, or statements of company policy and procedure to
that effect, can give rise to rights enforceable in contract.
[*Toussaint,* 408 Mich 610.]

[6] Plaintiff testified at trial:

> *A.* Well, when I knew they were going to hire me,—the store
> at the time was not open on Sunday, but I said, "If you do hire
> me, I am not interested in working on Sunday, so you would be
> doing me a favor by not hiring me."
> *Q.* What was the reply?
> *A.* They hired me. I don't recall a definite reply.

Mr. Hansen recalled his reply as follows:

> *A.* I told her at this point that Mr. Berman [sic] counseled
> with me and that there wasn't a problem with her working on
> Sundays.
> *Q.* In other words, she didn't have to [work on Sundays]?
> *A.* Right.

understanding with Montgomery Ward governing the terms of her employment status once she signed the disclaimer providing employment at will in May of 1982.[7] Montgomery Ward took action which we expressly approved of in *Toussaint* and entered into a contract with plaintiff making her employment terminable at will. On the basis of this agreement, Montgomery Ward properly terminated plaintiff's employment.

This case is analogous to *Ledl v Quik-Pik Stores,* 133 Mich App 583; 349 NW2d 529 (1984). In *Ledl,* the plaintiff was given assurances at the time she accepted employment that she would continue to be employed as long as her performance was satisfactory. Approximately seven and one-half years after being hired, she signed an employment agreement which provided that the defendant could terminate her employment with or without cause. The Court of Appeals concluded that the plaintiff failed to state a claim for breach of an employment contract because the language of the contract negated any prior oral agreements she may have had that were based on her employer's assurances.

In the instant case, on May 16, 1982, thirteen years after plaintiff was hired, she signed an employment agreement which provided that her employment was at will. A closely related sign-off sheet was involved in *Dell v Montgomery Ward &*

---

[7] In the instant case, we find it unnecessary to decide if the statements directed at plaintiff, when she was hired, constituted an oral contract because of the existence of the subsequent written agreement.

Assuming that an express oral contract actually existed prior to plaintiff signing the employment-at-will disclaimer, the disclaimer would not fail for lack of consideration. A contract modification, in the absence of additional consideration, is enforceable if it is in writing and signed by the party against whom it is charged. MCL 566.1; MSA 26.978(1).

*Co, Inc,* 811 F2d 970 (CA 6, 1987).[8] In *Dell,* the plaintiff alleged a breach of contract claim under *Toussaint* against Montgomery Ward after being fired for deceptively covering up the wrongful conduct of one of his subordinates. The plaintiff executed the sign-off sheet, expressly acknowledging that his employment was at will and was terminable with or without just cause. The trial court granted the defendant's motion for summary judgment. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed the trial court's ruling on the *Toussaint* issue. Writing for the court, Judge Ryan concluded:

> It is difficult to imagine what more the defendant might have done to make it crystal clear to Dell, and all Montgomery Ward employees, that, unless some other arrangement were made directly with the President and Chief Executive Officer or Executive Vice President of Human Resources, Montgomery Ward employees are employees "at will" who may be discharged with or without cause. [*Id.,* p 974. See also *Haas v Montgomery Ward & Co, Inc,* 812 F2d 1015 (CA 6, 1987).]

Plaintiff argues that although she read and

[8] The employment policy in *Dell* provides:

"I have read and fully understand the rules governing my employment with Montgomery Ward. I agree that, I will conform to these rules and regulations and, further understand and agree that my employment is for no definite period and may, regardless of the time and manner of payment of my wages and salary, *be terminated at any time by Montgomery Ward or me, with or without cause, and without any previous notice.* Further, I understand that no Organization Manager or Representative of Montgomery Ward other than the President, Chief Executive Officer or Executive Vice President of Human Resources has authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to the foregoing." (Emphasis added.) [*Id.,* p 973.]

understood the written employment-at-will agreement, she did not believe it applied to her Sunday work arrangement. Plaintiff contends that because mutual assent is lacking, the executed sign-off sheet defining her status as an employee at will did not alter the fact that she would not be terminated for refusing Sunday employment.

It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence.[9] Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions.

As this Court has previously held:

> The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge. If he cannot read, he should have a reliable person read it to him. His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself. [*Sponseller v Kimball,* 246 Mich 255, 260; 224 NW 359 (1929).]

If plaintiff did not understand the terms of the sign-off sheet, she had a duty to inquire about its contents. The record does not reflect any attempt by plaintiff to find out whether or not she was excused from Sunday employment under the terms of the disclaimer. In any case, we find the disclaimer unambiguous on the subject of discharge and comprehensive on the subject of termination.

[9] *Cleaver v Traders' Ins Co,* 65 Mich 527, 533; 32 NW 660 (1887) (an action to enforce an insurance contract); *Warren v Federal Life Ins Co,* 198 Mich 342, 353; 164 NW 449 (1917) (an action to recover insurance premiums on a policy); *Gardner v Johnson,* 236 Mich 258; 210 NW 295 (1926) (the quantity of goods in a contract was disputed).

It does not suggest that she was immune from discharge for refusing Sunday work.

In sum, Montgomery Ward took the action expressly approved in *Toussaint* and entered into a contract with plaintiff making her employment terminable at will. Plaintiff assented to the terms of the employment agreement by signing the sign-off sheet and returning it to Montgomery Ward. Upon the basis of this agreement, Montgomery Ward terminated plaintiff's employment. Therefore, regardless of whether an express oral contract actually existed at the time of her hiring, as a matter of law, plaintiff and Montgomery Ward later reached a mutual understanding with regard to termination through the sign-off sheet. We find that plaintiff's employment with Montgomery Ward was, as a matter of law, an employment-at-will relationship. Therefore, plaintiff cannot prevail in her breach of contract action.

B

Plaintiff also argues that defendant acquiesced in her refusal to work Sundays, thus creating a contract implied in fact that she not be terminated for such refusal. Regardless of whether an implied contract arose, as a matter of law, it did not apply to plaintiff at the time she was discharged because the express modified contract under the terms of the sign-off sheet was in effect at the time of her discharge. An implied contract cannot be enforced where the parties have made an express contract covering the same subject matter. *In re De Haan Estate,* 169 Mich 146; 134 NW 983 (1912); *Steele v Cold Heading Co,* 125 Mich App 199, 202-203; 336 NW2d 1 (1983); *Hickman v General Motors Corp,* 177 Mich App 246, 251; 441 NW2d 430 (1989).

Under the rule set forth above, plaintiff cannot prevail on her claim for breach of contract.[10]

### III. CONCLUSION

Our decision recognizes that once a disclaimer providing employment at will is signed by an employee, excepting any subsequent modification, the employee may be terminated for any, or no, reason. Thus, in the present case, plaintiff cannot prevail on a claim for breach of contract.

The decision of the trial court and Court of Appeals is reversed with regard to the breach of contract claim, and a judgment notwithstanding the verdict shall be entered.

However, we affirm the trial court's ruling on the religious discrimination issue because of defendant's failure to object to the instructions given at trial. We do not retain jurisdiction.

CAVANAGH, C.J., and BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred with RILEY, J.

[10] On appeal in this Court, Montgomery Ward alleges that the breach of contract instruction given by the trial court was spoken in error.

Furthermore, defendant argues that the jury instruction on religious discrimination, SJI2d 105.03, was either inapplicable or insufficient to charge the jury. Defendant urges this Court to change the jury instruction to require a jury, in a religious discrimination case, to consider (1) the sincerity of plaintiff's alleged religious belief, and (2) the effect of defendant's effort and duty, if any, to accommodate those beliefs without undue prejudice.

It is well established that failure to object at trial to instructions and failure to state the reason for the objection does not require reversal absent manifest injustice. *Hunt v Deming*, 375 Mich 581, 585; 134 NW2d 662 (1965); *Postill v Booth Newspapers, Inc*, 118 Mich App 608, 627; 325 NW2d 511 (1982); *Strach v St John Hosp Corp*, 160 Mich App 251, 281-282; 408 NW2d 441 (1987). Having thoroughly reviewed the record, we note that defendant did not object to the instructions given. In fact, the trial court gave defendant's proposed instructions. We are not persuaded that manifest injustice has occurred with respect to the trial court's failure to give plaintiff's jury instructions on religious discrimination or that the breach of contract instruction was insufficient.

LEVIN, J. The jury found that Montgomery Ward

—agreed that Jane Scholz would not be required to work on Sunday, and

—wrongfully discharged her when she refused to work on Sunday.[1]

The majority does not challenge the jury's findings of fact. It states rather that "[e]ven if we were to assume plaintiff had an express oral contract with Montgomery Ward that she did not have to work on Sundays," a contract Scholz claimed was entered into when she was hired, Scholz subsequently reached a "new understanding" with Montgomery Ward, in May, 1982, when she signed the sign-off sheet, "governing the terms of her employment status" and providing for employment at will. (*Ante,* pp 89-90.)

The majority concludes that because Scholz was an employee at will she cannot maintain an action for wrongful discharge. It affirms the verdict for Scholz on the religious discrimination claim, and to that extent I concur.

---

[1] The jury was instructed:

In this case, plaintiff claims that defendant agreed when it hired plaintiff not to require her to work on Sundays and that defendant violated this agreement by discharging her for refusing to work on Sundays.

If you find that defendant did promise or agree that plaintiff would not be required to work on Sunday, and further that defendant terminated plaintiff after she refused defendant's requests to work on Sunday, then you must find that plaintiff was wrongfully discharged by defendant.

Montgomery Ward did not object to the foregoing instruction. Its motion for directed verdict after Scholz rested, renewed after it rested, was denied except that the judge dismissed an age discrimination claim.

I

The "new understanding" is embodied in the following paragraph of the "new employee sign-off sheet" that Scholz was asked to and did sign in May, 1982, although she was not a new employee:

I have read and fully understand the rules governing my employment with Montgomery Ward. I agree to employment with Montgomery Ward under the conditions explained. I understand these conditions can be changed by the Company, without notice, at any time. I also understand and agree that my employment is for no definite period and may, regardless of the time and manner of payment of my wages and salary, be terminated at any time, with or without cause, and without any previous notice.

Scholz testified that she did not understand that by signing the sign-off sheet she could be required to work on Sundays. Scholz argued that the rules and regulations in the Welcome to Montgomery Ward Handbook that accompanied the new employee sign-off sheet had nothing to do with Scholz' "other agreement," entered into when she was hired, whereby she had conditioned her employment on not working on Sundays, and to which Montgomery Ward had agreed.

II

The facts are essentially undisputed. This is not a case where the testimony of the witnesses for the employer differed significantly from the testimony of the employee's witnesses. Employer claims that juries are inclined to be sympathetic to employees, and, on that basis, in defiance of the evidence, resolve against employers disputed factual issues are, insofar as this case is concerned, misplaced.

Mr. Hansen, Montgomery Ward's personnel director, testified that when Jane Scholz was hired the store manager was looking for more mature women. Hansen spoke with the store manager when Scholz raised a question about Sunday work. Hansen then reported to Scholz that he had counseled with the store manager and that "there wasn't a problem with her working on Sundays."

When Scholz was hired, Montgomery Ward was not open on Sundays. A short time later Montgomery Ward opened on Sundays, and Scholz was thereafter asked by a person other than Hansen to work on Sundays. She refused to do so, and no action was taken by Montgomery Ward.

Five years later, in 1977, a new store manager asked Scholz to work on Sundays. When she explained that she was not required to work on Sunday, he asked her to obtain a letter from her pastor, which she did. Scholz was not required, until the events that led to her discharge, to work on Sunday at any time during the thirteen years of her employment with Montgomery Ward. She worked holidays to make up for the time that she did not work on Sundays.

In May, 1982, Scholz signed the new employee sign-off sheet. Subsequently, another employee manual was issued, but Scholz did not sign an accompanying employee sign-off sheet. The employee sign-off sheet that Scholz did *not* sign contained language corresponding to the language in the sign-off sheet considered in *Dell v Montgomery Ward & Co, Inc,* 811 F2d 970 (CA 6, 1987), discussed in the majority opinion.[2]

---

[2] *Ante,* pp 90-91.

The employee sign-off sheet that Scholz did not sign contained language corresponding to the language in the sign-off sheet that she did sign in May, 1982. In addition, the sign-off sheet that she did *not* sign contained language corresponding to language in the sign-off sheet adverted to in *Dell:*

In September, 1983, Ralph Bevan was Scholz' immediate supervisor. He insisted that she begin working on Sundays. The matter was discussed with the personnel and store managers. The store manager testified that he discussed the matter with "corporate people in Chicago." Thereafter, the personnel manager wrote Scholz that she would be discharged if she did not work on Sunday, November 13, 1983. A copy of that letter was sent to the Chicago personnel and area managers. She did not work that Sunday and was discharged.

Scholz was then three years short of retirement at age seventy. Montgomery Ward required that Scholz work one Sunday a month for perhaps three hours—it was the policy to permit persons who attended church, which Scholz did every Sunday, to report for work Sunday afternoon. The controversy thus concerned no more than forty hours a *year* for *three* years—one hundred twenty hours—which Scholz would have been willing to make up by working on national holidays. The store manager testified that it was nevertheless necessary to discharge Scholz because "store policy required uniformity in treatment of employees," the Law of the Medes and the Persians.[3]

III

Scholz asserts that she did not understand that

Further, I understand that no Organization Manager or Representative of Montgomery Ward other than the President and Chief Executive Officer or Executive Vice President of Human Resources has authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to the foregoing.

[3] Now, O king, establish the decree, and sign the writing, that it be not changed, according to the law of the Medes and the Persians, which altereth not. [Daniel 6:8.]

by signing the sign-off sheet she was agreeing to work on Sunday, or abrogating a right not to be discharged for refusing to work on Sunday. The majority responds to her assertion that "we find the disclaimer ·unambiguous on the subject of discharge and comprehensive on the subject of termination. It does not suggest that she was immune from discharge for refusing Sunday work."[4]

The premise of the majority is, thus, that the language of the sign-off sheet is unambiguous, and can have only one meaning. Professor Corbin wrote that statements about " 'plain and clear' " meaning "assume a uniformity and certainty in the meaning of language that do not in fact exist . . . ."[5]

The United States Supreme Court has said that "[i]t is hornbook contract law that the proper construction of an agreement is that given by one of the parties when 'that party had no reason to

---

[4] *Ante,* pp 92-93.

The majority faults Scholz for failing, presumably before she signed the sign-off sheet, to inquire whether she would continue to be excused from Sunday employment. The majority says that "the failure of a party to obtain an explanation of a contract is ordinary negligence," and that such negligence "estops the party [who failed to seek an explanation] from avoiding the contract on the ground that the [negligent] party was ignorant of the contract provisions." *Ante,* p 92.

The majority relies on cases declaring that a person who signs without reading a document cannot be heard to complain that it contains unexpected provisions, *Sponseller v Kimball,* 246 Mich 255, 260; 224 NW 359 (1929), *Cleaver v Traders' Ins Co,* 65 Mich 527, 533; 32 NW 660 (1887), *Warren v Federal Life Ins Co,* 198 Mich 342, 353; 164 NW 449 (1917), and *Gardner v Johnson,* 236 Mich 258; 210 NW 295 (1926). Scholz did not claim that she had failed to read the sign-off sheet.

Nor did Scholz contend that she "did not understand the terms of the sign-off sheet," *ante,* p 92, or that she "was ignorant of the contract provisions." She contended rather, as stated by the majority, that "although she read *and understood* the written employment-at-will agreement, she did not believe it applied to her Sunday work arrangement." *Ante,* pp 91-92. (Emphasis added.)

[5] 3 Corbin, Contracts, § 542, pp 108, 109-110, see *Shiffer v Gibraltar Bd of Ed,* 393 Mich 190, 194; 224 NW2d 255 (1974).

know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.' Restatement (Second) of Contracts, § 201(2)(b) (1981).[6] See also Farnsworth, Contracts 487-488 (1982)." *United States v Stuart,* 489 US 353, 368, n 7; 109 S Ct 1183; 103 L Ed 2d 388 (1989).

The record establishes that Scholz would not have agreed to work on Sunday, did not know or have reason to know that Montgomery Ward attached to the sign-off sheet the meaning that she could, by signing it, thereby be required to work on Sunday, and would not have signed it if she thought that by doing so she was agreeing to work on Sunday. The record also establishes that Montgomery Ward knew or had reason to know[7] that Scholz claimed she was not required to work on Sunday, and would not, if she were to sign the writing, attach to the writing a meaning that would require her to work on Sunday.[8]

---

[6] Whose Meaning Prevails

(1) Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.

(2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made

(a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or

(b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

(3) Except as stated in this Section, neither party is bound by the meaning attached by the other, even though the result may be a failure of mutual assent. [2 Restatement Contracts, 2d, § 201, p 83.]

[7] Cf. *United States v TIME-DC, Inc,* 381 F Supp 730, 738 (WD Va, 1974).

[8] Scholz contends that because her understanding of the meaning of the words used in the sign-off sheet differed from Montgomery Ward's

On the principle recognized by the United States Supreme Court in *Stuart,* and set forth in the Restatement, Scholz', rather than Montgomery Ward's, meaning or understanding is to be attached to the writing. Montgomery Ward knew or had reason to know that Scholz understood that their agreement would continue to be that she was not required to work on Sunday, and that Scholz did not know or have reason to know that Montgomery Ward was seeking to abrogate, by the

there was no mutual assent. The Restatement of Contracts states that where the parties attach materially different meanings to the words mutual assent is absent if *neither* party knows or has reason to know the meaning attached by the other.

The sign-off sheet did not fail due to lack of mutual assent because Montgomery Ward knew or had reason to know the meaning attached by Scholz, and Scholz did not know or have reason to know the meaning attached by Montgomery Ward.

The Restatement (see also n 6) continues that in such a case the agreement is operative according to the meaning attached by the party who did not know or have reason to know.

If the majority were of the opinion that Montgomery Ward did not know or have reason to know the meaning attached by Scholz, then the May, 1982, agreement failed for lack of mutual assent because then neither party knew or had reason to know the meaning attached by the other.

The Restatement provides:

Effect of Misunderstanding
(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and
(a) neither party knows or has reason to know the meaning attached by the other; or
(b) each party knows or each party has reason to know the meaning attached by the other.
(2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if
(a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or
(b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party. [1 Restatement Contracts, 2d, § 20, pp 58-59.]

words used in the new employees sign-off sheet, a right, established when she was hired, not to work on Sunday.

IV

Scholz argues that the new employee sign-off sheet had nothing to do with her "other agreement," entered into when she was hired, whereby she had conditioned her employment on not working on Sundays, and to which Montgomery Ward had agreed. This presents the question whether the sign-off sheet was a complete integration of all the terms of the employment contract.

"[A] writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties." 2 Restatement Contracts, 2d, § 210, comment b, p 118. In *Brady v Central Excavators, Inc,* 316 Mich 594, 607; 25 NW2d 630 (1947), this Court said the parties may introduce extrinsic evidence to show that a writing is only a partial integration and does not include all the elements of their agreement.[9]

---

[9] Similarly, see 3 Corbin, Contracts, §§ 582, 583, pp 444-475; 4 Williston, Contracts (3d ed), §§ 630, 637, pp 925-948, 1036-1037; *Blackwood v Brown,* 34 Mich 4, 6 (1876); *Stimac v Wissman,* 342 Mich 20, 25; 69 NW2d 151 (1955).

> Evidence of Prior or Contemporaneous Agreements and Negotiations
> Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish
> (a) that the writing is or is not an integrated agreement;
> (b) that the integrated agreement, if any, is completely or partially integrated;
> (c) the meaning of the writing, whether or not integrated;
> (d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause;
> (e) ground for granting or denying rescission, reformation, specific performance, or other remedy. [2 Restatement Contracts, 2d, § 214, pp 132-133. Emphasis added.]

Extrinsic evidence concerning discussions and events preceding the signing of the May, 1982, sign-off agreement was admissible to show the actual intent:

> Defendant correctly contends that where a latent ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid to the construction of the contract.
>
> A latent ambiguity is one "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings." Black's Law Dictionary (4th ed), p 105. *Since the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist.* [*McCarty v Mercury Metalcraft Co,* 372 Mich 567, 575; 127 NW2d 340 (1964). Emphasis added.]

It is, I think, clear that the new employee sign-off sheet was not a complete integration. It was in terms addressed to new employees, persons who perforce would not have entered into prior oral agreements with Montgomery Ward. The sign-off sheet did not purport to supersede any prior agreement, oral or written. It simply did not focus on prior agreements, did not evidence a " 'deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract,' " *Brady, supra,* p 606, and was not a complete integration respecting the prior agreement with Scholz.

V

Scholz asserts that she was coerced into signing the sign-off sheet. The Restatement provides:

Modification of Executory Contract

A promise modifying a duty under a contract not fully performed on either side is binding

(a) *if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made;* or

(b) to the extent provided by statute; or

(c) to the extent that justice requires enforcement in view of material change of position in reliance on the promise. [1 Restatement Contracts, 2d, § 89, p 237. Emphasis added.]

The accompanying comment states:

The reason for modification *must rest in circumstances not "anticipated"* as part of the context in which the contract was made, but a frustrating event may be unanticipated for this purpose if it was not adequately covered, even though it was foreseen as a remote possibility. When such a reason is present, *the relative financial strength of the parties, the formality with which the modification is made,* the extent to which it is performed or relied on and other circumstances may be relevant to show or negate imposition or unfair surprise. [*Id.,* comment b, p 238. Emphasis added.]

Scholz acknowledged that, from the outset of her employment, she was an employee at will. She claimed only that it was agreed that she would not be required to work on Sunday, and would not be discharged for refusing to work on Sunday. The jury found for her on those issues when it found she was wrongfully discharged when she was discharged for refusing to work on Sunday. Because

(i) Scholz conceded that she was an em-

ployee at will, although one not required to
work on Sunday,[10]

(ii) the sign-off sheet was not a complete
integration of the employment contract,

(iii) Scholz' understanding of the meaning of
the words used in the sign-off sheet should be
attached rather than Montgomery Ward's,

there was no modification of a duty under the
employment contract, and hence the signing of the
1982 sign-off sheet did not work a modification of
the agreement that Scholz was not required to
work on Sunday.

Further, the possibility of Montgomery Ward
remaining open on Sunday was anticipated by
Scholz and, thus, was not a "circumstance[ ] not
anticipated by the parties" when the contract was
made. Also, requiring Scholz to work on Sunday
was not "fair and equitable" under all the circum-
stances. She could have been asked to work forty
hours a year on national holidays and clearly
would have agreed to do so.

## VI

The majority concludes "*as a matter of law,*
plaintiff and Montgomery Ward later reached a
*mutual* understanding with regard to termination
through the sign-off sheet." *Ante,* p 93. (Emphasis
added.)[11] Whether the understanding was "mutual"
is not a matter of law.

Be that as it may, the foregoing and other
statements in the majority opinion are likely to be

---

[10] Claims of employment discrimination are often made by employ-
ees at will. Similarly, an employer can agree that an employee at will
will not be discharged for a particular reason.

[11] I agree with the majority that the statute, MCL 566.1; MSA
26.978(1), dispenses with the need for consideration. It does not
dispense with the need for mutual agreement.

read as meaning that, without regard to the facts and circumstances of particular cases, a "new understanding" is deemed to have been "mutually" agreed upon "once [the employee] signed the disclaimer providing employment at will . . . ."[12] This Court should not so casually deprive of their day in court employees, of Montgomery Ward and of other employers, who claim they entered into just- or good-cause contracts of employment and who later were constrained to sign such a "disclaimer."

## VII

The majority states that an identical sign-off sheet was involved in *Dell, supra,* text accompanying n 2, and quotes language in that opinion adverting to language in the sign-off sheet in *Dell* that is *not* in the sign-off sheet in the instant case.[13]

The majority, also following the lead of *Dell,* states that Montgomery Ward "took action which we expressly approved of in *Toussaint* [v *Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980)] and entered into a contract with plaintiff making her employment terminable at will." (*Ante,* p 90.)

*Dell* was a new employee, not an employee, like Scholz, with whom there was a prior oral agreement sought to be modified. The statement in *Toussaint,* quoted in *Dell,* spoke of a "company policy of requiring *prospective* employees to acknowledge that they served at the will or the

---

[12] *Ante,* pp 89-90.

[13] The sentence quoted from *Dell* includes reference to the following concept expressed in the sign-off sheet in *Dell* (see n 2) that was not in the sign-off sheet signed by Scholz: " 'unless some other arrangement were made directly with the President and Chief Executive Officer or Executive Vice President of Human Resources . . . .' " (*Ante,* p 91.)

pleasure of the company . . . ." *Toussaint, supra,*
p 612. (Emphasis added.) Scholz was not a "pro-
spective employee."

## VIII

In *Toussaint,* this Court said, and later, in *Val-
entine v General American Credit, Inc,* 420 Mich
256, 258; 362 NW2d 628 (1984), repeated that
employment is at will absent another agreement,
and that a contract of employment may properly
so expressly provide.

Modification of an employment contract is in
general subject to the same rules of law applicable
to the modification of other contracts. These rules
of law, the product of experience, seek to achieve a
reasoned balance between competing values and
policies and to protect and enforce the true agree-
ment. There are no special rules of law designed to
lighten the burden on an employer who seeks to
modify an express oral agreement.

Affirming the jury verdict that Scholz was
wrongfully discharged would not negate an em-
ployer's power to negotiate for modification of a
prior oral just- or good-cause contract, or, as here,
a contract that no work will be required on Sun-
day.[14]

Employers have full freedom of contract and
managerial control. When, however, they enter
into an agreement with an employee, they give up
something as does any person who enters into a
contract. Presumably employers who enter into
agreements with their employees hope to obtain,
and probably generally do obtain, something
worthwhile in return.

---

[14] It is apparent from this record that there would have been no
difficulty in working out a satisfactory arrangement with Scholz to
make up the time not worked on Sunday in some other manner.

Employers, insurers, banks, credit card companies, and others have a need for standardized agreements. The law recognizes the utility of standardized agreements.[15] When, however, before the agreement is standardized, a separate agreement was entered into with a person with whom a standardized agreement is later signed, rules of law designed to protect the enforceability of the earlier agreement of the parties come into play, if it appears, on an examination of all the facts and circumstances, that it continues to represent the true agreement of the parties, and should not be brushed aside or ignored.

MALLETT, J., took no part in the decision of this case.

---

[15] See 2 Restatement Contracts, § 211, pp 119-120, concerning the policing of standardized agreements; *Darner Motor Sales, Inc v Universal Underwriters Ins Co*, 140 Ariz 383; 682 P2d 388 (1984); *Lowey v Watt*, 221 US App DC 435; 684 F2d 957 (1982).