Terry **BOLEN**, Plaintiff,

v.

**E.I. DU PONT DE NEMOURS & COMPANY**, Defendant.

**Civ. A. No. 91–CV–40208–FL.**

United States District Court,
E.D. Michigan, S.D.
at Flint.

Dec. 10, 1991.

On Motion for Reconsideration
Jan. 9, 1992.

Glen N. Lenhoff, Flint, Mich., for plaintiff.

Richard M. Tuyn, Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is defendant's Motion for Summary Judgment, plaintiff's Response, and defendant's Reply. A hearing on the motion was held on November 12, 1991. The questions presented by this motion are (1) whether plaintiff raises jury issues regarding the establishment of a *Toussaint* "termination for cause" employment contract and, (2) if so, whether defendant had cause to terminate plaintiff or instead wrongfully discharged plaintiff in breach of his employment contract. For the following reasons, defendant's Motion is DENIED.

Plaintiff, Terry Bolen, was hired in 1977 by defendant, E.I. DuPont de Nemours & Co., as a "wage roll" employee. He worked for defendant in several different job positions until June 11, 1985 when he was fired for sleeping during working hours (defendant's MSJ at 4).[1] During his pre-employment interview with personnel manager Robert Walrath, plaintiff was not promised a job and no guarantees of job security were made (defendant's MSJ at 1). At all times that plaintiff was employed by defendant, employee conduct was governed by work rules embodied in defendant's "Standards of Conduct" (*see* exh. A). These Standards enumerate several acts and state that:

    a. Any one of the following acts is cause for corrective action, *which could include discharge.*

    1. Unsatisfactory safety performance.

    2. Unsatisfactory job performance.

    \*   \*   \*   \*   \*   \*

    11. Being away from the job without permission.

    12. *Sleeping during working hours.*

    \*   \*   \*   \*   \*   \*

    b. The steps for discharge following an act contrary to the Standards of Conduct are the same as that for following probation.

(defendant's "Standards of Conduct," "Corrective Action Procedure," attached to defendant's MSJ at exh. A). The policy further states that: "An employee will be recommended for discharge only after the supervisor has concluded that further corrective efforts are not justified." (*Id.*). The decision by a supervisor to discharge an employee is subject to approval by the Plant Manager and his staff. (*Id.*). These rules of conduct were reviewed with plaintiff when he first started working for defendant, and are reviewed annually with every DuPont employee (defendant's MSJ at 1).

Plaintiff points out, however, that on his first day of employment, at a meeting conducted by DuPont managers Walrath and Sam Roberts, he, among a group of employees, was told that defendant's employees "could not be fired without good cause" (plaintiff's Response at 2). According to plaintiff, the group was also told that defendant had a progressive discipline system consisting of (1) verbal reprimand, (2) written reprimand, (3) suspension, and (4) discharge (plaintiff's Response at 2). Moreover, plaintiff emphasizes that, upon application, plaintiff did not sign an "at will" disclaimer, but, rather, the application did indicate that misrepresentations in the job application or in a medical questionnaire was grounds for immediate dismissal (plaintiff's Response at 2).[2]

Defendant insists that plaintiff's reliance on alleged verbal assurances of job security and the fact that defendant has a Disciplinary Action Procedure does not give rise to a just cause employment contract. In

---

**1.** Whether plaintiff was fired for merely sleeping or for "willful" sleeping is disputed by the parties. This disagreement goes to the second issue before the Court, whether defendant had just cause to discharge plaintiff.

**2.** It is noted by the Court that, although the absence of an "at will" disclaimer is significant to plaintiff's establishing that an implied "just cause" termination policy was in effect, the fact that the application made clear that any misrepresentation is grounds for discharge does not limit the presumption of "at will" employment but, rather, only emphasizes an instance of conduct for which discharge will likely result.

the alternative, defendant argues that plaintiff's admission of sleeping on the job constitutes just cause for termination.

In Michigan, employment relationships are presumed to be "terminable at the will of either party." *Lynas v. Maxwell Farms*, 279 Mich. 684, 687, 273 N.W. 315 (1937). " 'Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason.' " *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 89, 468 N.W.2d 845 (1991), quoting *Valentine v. General Am. Credit, Inc.*, 420 Mich. 256, 258–59, 362 N.W.2d 628 (1984). In *Toussaint v. Blue Cross–Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), however, the Michigan Supreme Court recognized both an express and implied "just cause" exception to this rule. The *Toussaint* Court held that a legally enforceable provision of an employment contract providing that an employee shall not be discharged except for cause "may become part of the contract either [1] by express agreement, oral or written, or [2] as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Id.* at 598, 292 N.W.2d 880.

The facts in the present case, however, are not as clear cut as were those in *Toussaint*. In that case, Mr. Toussaint relied upon both oral statements made during his several pre-hire interviews—he was promised he would not be terminated " 'as long as I did my job' "—and a company manual he was given upon inquiring about job security which expressly stated that he could be released " 'for just cause only.' " *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 641, 473 N.W.2d 268 (1991), quoting *Toussaint*, 408 Mich. at 613, 292 N.W.2d 880 (*see* copy attached to defendant's MSJ at exh. B).

Neither, however, is this case as factually clear as the recently decided *Rowe v. Montgomery Ward & Co.* decision. In *Rowe*, at her first and only interview for employment, oral statements were made to the plaintiff to the effect that as long as sales clerks "generated sales and were honest ... they had a job at Wards." *Rowe* at 645, 473 N.W.2d 268. The Michigan Supreme Court held that these statements "were couched in general terms, more akin to stating a policy as opposed to offering an express contract." *Id.* Furthermore, the Court found in these words no clear indication of an intent to form a contract for permanent employment, *id.*,—as was the case with the series of interviews and negotiations in *Toussaint.*

In *Rowe*, the plaintiff also contended that Wards' "Rules of Personal Conduct," which enumerated prohibited conduct for which employees could be dismissed, created a contract to terminate only for cause. *Id.* The Court, however, found that "[n]othing in the rules suggested that the enumerated conduct was the only basis for dismissal, and the rules were consistent with a termination-at-will policy." *Id.* at 645, 473 N.W.2d 268.

An extremely significant fact which distinguishes the *Rowe* case from the present action is that, in *Rowe*, the plaintiff was given written notice of the defendant's policy regarding her employment-at-will status. In both January and August of 1982 the defendant circulated to all its employees a handbook entitled "Welcome to Wards." Accompanying these handbooks was a "Sign–Off Sheet" which provided that the employee understands company policies and that all employees were subject to termination with or without cause. Although the plaintiff refused to sign these forms, in 1983 another handbook was issued which included at-will employment language within the handbook itself. *Rowe* at 633, 473 N.W.2d 268. In the instant action, defendant made no clear statement, either oral or written, that plaintiff's employment was at-will (plaintiff's Response at 14). Although this absence of a clear statement does not alter the presumption of at-will employment, it does open the defendant up to claims that defendant's policy statements give rise to an implied for cause termination policy. *Hatfield v. Johnson Controls, Inc.*, no. 91–CV–40029–FL at 3, 1992 WL 352419 (Oct. 18, 1991).

Defendant argues at page five of its Motion that the alleged verbal and written representations upon which plaintiff relies are insufficient to overcome the presumption of at-will employment. Defendant argues that the oral statements are not "clear and unequivocal," as required by the *Rowe* court to overcome the presumption of "at will" employment (defendant's MSJ at 6) (defendant does not cite to the page upon which this requirement appears), nor are the relied upon statements "based on more than an expression of an optimistic hope of a long relationship." *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 936 (E.D.Mich.1987).

Upon review of plaintiff's Response brief, and plaintiff's deposition testimony, however, clearly plaintiff has alleged that statements were made to him and other employees indicating that it was defendant's policy not to fire employees "unless they had good cause to fire you" (plaintiff's dep. at 26, *see* plaintiff's Response at 2). Moreover, plaintiff alleges that during a 1981 union organizing campaign plaintiff was told by Sam Roberts, defendant's Personnel Manager, that defendant would not discharge any employee without good cause and progressive discipline (plaintiff's Response at 3).[3] In addition, plaintiff cites numerous other alleged statements and deposition testimony that could be construed to establish a "just cause" termination policy (*see* plaintiff's Response at 3–5).

Defendant next argues that because plaintiff did not apply for a unique position, or engage in pre-employment negotiations, plaintiff has failed to plead a sustainable *Toussaint* claim (defendant's MSJ at 9). This argument, however, is without merit. Although the plaintiff in *Toussaint* engaged in negotiations prior to employment, and the Court relied upon promises made in these negotiations to find an express "just cause" termination policy, the Court by no means made it a requirement that "just cause" representations be made prior to employment. It does not matter when, during an employee's tenure, *Toussaint* statements are made. *See Ross v. State Farm Ins.*, 676 F.Supp. 781, 785 (E.D.Mich. 1987) ("Reliance is essentially an element of an estoppel theory. Thus, where an employer reasonably leads an employee to believe that discharge will be for 'just cause only' the employer may be estopped to deny it...."). Certainly the presence of policy representations at the time of hiring is not a *Toussaint* requirement.

Defendant also argues that plaintiff's employment relationship with defendant was one terminable at any time defendant was not satisfied with plaintiff's performance (defendant's MSJ at 10). Defendant bases this satisfaction contract argument on the Sixth Circuit's decision in *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986) (defendant's MSJ at 12). Defendant states that "the court found that because of the inclusion of traditional satisfaction language (unsatisfactory performance of your job), the employer's handbook and personnel manual constituted 'a classic example of a satisfaction contract' " (defendant's MSJ at 12, citing *Reid*, at 462). Defendant then goes on to compare Sears' inclusion of "Unsatisfactory performance of your job" among its rules of conduct possibly resulting in termination to the provision in DuPont's policy manual listing "Unsatisfactory job performance" as a ground for discipline (defendant's MSJ at 13–14). Defendant concludes that this satisfaction language, like that in *Reid*, creates a satisfaction contract, terminable upon the subjective dissatisfaction of the employer (defendant's MSJ at 14).

This conclusion, however, was not the conclusion of the Sixth Circuit. The Sixth Circuit in *Reid* expressly held that "[t]he issue is rendered moot by our determination that Ms. Batchelor was employed by Sears under an at will contract." 790 F.2d at 462. The listing of unsatisfactory performance among employee conduct leading to discipline does not create unquestionably a satisfaction employment contract.

---

**3.** The fact that plaintiff voted for the union does not mean that he did not believe he had job security under a "just cause" contract—he certainly may have been concerned about a unilateral change in the contract, or in obtaining more job security, or both.

Whether there is a satisfaction contract is an issue for the trier of fact to determine, just as is the question of whether defendant's conduct and policy statements created a just cause employment contract.

Defendant's final argument is that at most plaintiff had a contract which provided for termination at defendant's discretion for violation of its written rules of conduct (defendant's MSJ at 15). This argument is two-fold. First, defendant argues that it has the discretion, as stated in the policy, to bypass any of the steps of the disciplinary procedure. Defendant states several cases which support this proposition. Plaintiff does not meet this argument. Therefore, and because the written policy leaves the decision of termination to the supervisor's discretion, the Court finds for the defendant as to this issue.

Second, defendant argues that, because plaintiff admits sleeping on the job, there is no factual issue in dispute regarding the existence of just cause for termination. Consequently, defendant argues, plaintiff's termination should be upheld on summary judgment.

Plaintiff, however, does dispute whether defendant had cause to fire plaintiff. Plaintiff insists that he did not intentionally sleep on the job (*see* plaintiff's Response at 10). Plaintiff argues that he was officially terminated for "willful sleeping" on the job, and that his supervisor mistakenly believed he was intentionally asleep. Plaintiff's argument, of course, contradicts the plain language of defendant's policies, which provide simply that sleeping on the job is prohibited. However, there is evidence that the circumstances of the night shift and flexible break hours on which the employees were allowed to sleep, may have given rise to a policy that the sleeping that was prohibited was that intentionally meant to avoid work.

Regarding the issue of whether there was just cause for defendant to terminate plaintiff, the relevant questions are for the jury to decide: did "no sleeping" mean "no willful sleeping"; and, if so, was plaintiff willfully sleeping?

For the foregoing reasons, defendant's Motion for Summary Judgment is DENIED.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION

Before the Court is the defendant's Motion for Reconsideration of its Opinion and ruling upon defendant's Motion for Summary Judgment. Because the briefs are extensive and the previous Opinion recites many of the facts, this Opinion will not repeat those matters and will be very direct.

■ Upon reconsideration of the rulings as requested, I now conclude the rulings were erroneous. It is simply irrelevant whether or not the plaintiff had a "just cause" contract. He was not dismissed on any basis or for any reason which could be adjudicated on a "just cause" standard. The basis for termination was for a specifically articulated reason not governed by a "just cause" contract; to wit: sleeping during working hours. Having specifically stated in the "standards of conduct" that discharge could result from sleeping during working hours, such discharge is unrelated to a "just cause" standard. Since plaintiff has always admitted that he, in fact, was sleeping during working hours, there is no factual dispute and the contract gave the employer the right to discharge for that reason.

I cannot resist making further comments, albeit dicta, concerning *"Toussaint"* claims. I do this for future reference and hopefully to offer a guideline to the profession.

The main issue argued in this case (but found irrelevant as stated) is common in the *Toussaint* case area: An employer's management representative or supervisor makes a statement to the employee or prospective employee that the employer only discharges for good cause or some justifiable reason. That statement, standing alone, could be reasonably made by any employer representative at any time, in any case. Plaintiffs immediately seize upon this and claim the *Toussaint* requirement

for a "just cause" employment contract has been met. And if the employer does not have a written policy negating a "just cause" contract, it may be argued that *Toussaint*'s requirements have been met—precisely the argument that plaintiff's able counsel has made in this case. Initially, it appeared to fit and was attractive.

The problem, however, with that argument is that it is unreal. It does not fit the facts of the employment world. Would not every modern employer instruct its management personnel to discipline or discharge an employee only for a good reason? Would not every modern employer counsel its employment supervisory personnel to avoid being arbitrary and capricious in dealing with its personnel? What employment supervisor in a modern setting would not tell an inquirer that the company has a policy of not disciplining or discharging employees without sufficient grounds or reason? Conversely no employer would try to engage the services of a prospective employee by telling that prospective employee that "when you work here, you are subject to being discharged without a good reason." One would not expect this to be said even if the employer has a written negation of the existence of a "just cause" contract.

The reality upon which a *Toussaint* "just cause" case turns is a *justifiable and reasonable reliance* by the prospective or current employee on some communication by the employer or its management agents that the employee has a *contractual* right not to be discharged without just cause. Something more than a responsible management's *policy* of not terminating without good cause must be shown in order to hold management to a *"contract* of just cause."

■ The point can best be made, as above, by acknowledging that no employer would tell a prospective employee that it is the management's policy to terminate employees arbitrarily, without proper reason or notice. Thus, establishing the employer's management *policy* is not the same as establishing that policy as a *contract*.[1]

What does this mean in these years when our economy is such that most persons are primarily concerned with long-term job security such as is common in Flint in the auto industry?

The down side of finding ever more fact questions in *Toussaint* cases based upon the announcement of a management policy not to discharge without just cause, keeps every employee guessing as to how a judge or a jury will determine the rights of both the employee and the employer. It will mislead an employee into thinking the employee has more rights than, indeed, the employee actually has and impose liability on an employer when the employer only intended to communicate a responsible management policy to its supervisory personnel. It has the fortunate or unfortunate result, depending upon your outlook, of impacting on unions, union organizations and the entire area of job security. This is demonstrated by the positions of the parties in this case where statements made during an unsuccessful union organizing campaign were recited by both parties for different interpretations of the relationship.

■ Upon further review I find in this case nothing more on the part of the employer than communicating its supervisory policy as to discharge and that missing from this case is any conduct or statement on the part of the employer *upon which the plaintiff could justifiably rely* in believing he had a *contract* of employment which could be terminated only for "good" or "just" cause.

But, as stated, I am unwilling to rely on that basis to grant the defendant's motion. Upon rereading the briefs following receipt of the motion for reconsideration, I am impressed with how effectively plaintiff has urged that the employer could discharge in this case only for "willful" sleeping and not for sleeping if one did not intend to do so, but rather fell asleep involuntarily. Plaintiff constructs an entire ar-

---

**1.** I say that in this case because plaintiff's counsel has proven himself very adept in turning what appears to be a management policy into a term of an employment contract.

gument on the basis that the employer *stated* the reason for plaintiff's discharge to be "willful sleeping in a remote location." The core of the argument is based entirely on the use of the word "willful." Plaintiff thus urges that he is entitled to a trial on the issue as to whether plaintiff was "willfully" sleeping or just unintentionally fell asleep. To state it in this naked way demonstrates how inappropriate the argument is and yet at the same time how effectively it was argued.

■ The employer's policy statement in its Standards of Conduct says: "Any one of the following acts is cause for disciplinary action, which could include discharge....

Sleeping during working hours."

The policy does not say "willfully sleeping during working hours." Notwithstanding a "just cause" contract (which I cannot here find), the discharge was justified by the undisputed fact that the employer expressly reserved the right to discharge for "sleeping during working hours," and the plaintiff admittedly was sleeping during working hours. The employer's specific right to discharge cannot be ignored simply because in the notice to the employee the employer added the word "willfully."

It is reasonable to conclude that the employer inserted the word "willfully" to justify why it determined to discharge the employee rather than impose some lesser discipline. Having reserved the right to terminate for sleeping during working hours, the existence or nonexistence of a "just cause" contract is irrelevant and the defendant's motion should and must be granted. The earlier Opinion was erroneous and is withdrawn. The Motion is GRANTED.

SO ORDERED.